GREAT NORTHERN RAILWAY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8433, 11850. Promulgated March 14, 1928.

SMITH: Pursuant to the findings of fact and opinion promulgated by the Board in the above-entitled proceedings (8 B. T. A. 225) on September 22, 1927, the petitioner, on October 17, 1927, filed a notice of settlement showing additional taxes to be paid and tax to be refunded for the years 1917, 1918, and 1919 as follows:

*Great Northern Railway Co. and affiliated companies*

|  | Additional tax due | Tax to be refunded |
|---|---|---|
| YEAR 1917 |  |  |
| Great Northern Railway Co. | $3,673.52 |  |
| Brandon, Devils Lake & Southern Railway Co. |  | $315.85 |
| Somers Lumber Co. |  | 19,439.21 |
| Great Northern Express Co. |  | 33,066.28 |
| YEAR 1918 |  |  |
| Great Northern Railway Co. and affiliated companies | 85,506.09 |  |
| YEAR 1919 |  |  |
| Great Northern Railway Co. and affiliated companies |  | 126,497.04 |
|  | 89,179.61 | 179,318.38 |
| Net tax to be refunded to Great Northern Railway Co. and affiliated companies |  | 90,138.77 |

*Director General*

|  | Additional tax due | Tax to be refunded |
|---|---|---|
| Year 1918 | $19, 084. 61 |  |
| Year 1919 |  | $36, 810. 13 |
|  | 19, 084. 61 | 36, 810. 13 |
| Net tax to be refunded to Directo General |  | 17, 725. 52 |

On November 22, 1927, the respondent submitted an alternative notice of settlement showing for the years 1917, 1918, and 1919 as follows:

*Statement of account*

IT : CR : RR
CBG

In re : Great Northern Railway Co., Docket Nos. 8433 and 11850

### 1917

| | |
|---|---|
| Tax assessed | $1, 051, 970. 83 |
| Tax paid | 1, 051, 970. 83 |
| Corrected tax liability | 1, 026, 274. 89 |
| Overpayment | 25, 695. 94 |

### 1918

| | |
|---|---|
| Tax assessed | $1, 104, 823. 34 |
| Tax paid | 1, 104, 823. 34 |
| Refund by Director General of Railroads | 178, 677. 46 |
| Net payment | 926, 145. 88 |
| Corrected tax liability | 1, 086, 064. 04 |
| Deficiency | 159, 918. 16 |

### 1919

| | |
|---|---|
| Tax assessed | $1, 831, 178. 33 |
| Tax paid | 1, 831, 178. 33 |
| Refunded by Director General of Railroads | 365, 678. 96 |
| Net payment | 1, 465, 499. 37 |
| Corrected tax liability | 1, 371, 124. 36 |
| Overpayment | 94, 375. 01 |

Hearing was had with respect to the merits of the alternative notices of redetermination on December 1, 1927, at which the points in dispute between the petitioner and the respondent were argued at length by counsel.

The following is a statement of differences between petitioner's proposed redetermination of income tax for the years 1917, 1918, and 1919, and respondent's alternative proposed redetermination:

GREAT NORTHERN RAILWAY COMPANY.

STATEMENT OF DIFFERENCES BETWEEN PETITIONER'S PROPOSED REDETERMINATION OF INCOME TAXES FOR THE YEARS 1917, 1918 AND 1919, AND RESPONDENT'S ALTERNATIVE PROPOSED REDETERMINATION.

### 1917

| | |
|---|---:|
| Petitioner's Proposal—To be refunded | $49,147.82 |
| Respondent's Proposal—" " " | 25,695.94 |
| Difference | 23,451.88 |

Consisting of:

Additions—

(a) Refund due Brandon, Devils Lake & Southern Railway Co. — 315.85

(b) Refund due Somers Lumber Co. — 19,439.21

(c) Refund due Great Northern Express Co. — 33,066.28

(d) Respondent included in redetermination interest on special assessment paid May 16, 1926 — 347.93

(e) Respondent erred in crediting payment of special assessment made May 16, 1926—

| | |
|---|---:|
| Amount paid | $44,985.61 |
| As credited by respondent | 44,637.68 |
| | 347.93 |

(f) Difference account disposition of decimals — .01

— 53,517.21

Deductions—

(g) Respondent has credited petitioner as if paid with an assessment made May 14, 1920, amount $31,693.82, on which the sum of $1,628.49 was paid and claim for abatement filed for the remainder. Difference — 30,065.33

— 23,451.88

### 1918

| | |
|---|---:|
| Petitioner's proposal—Additional taxes | $85,506.09 |
| Respondent's proposal— " " | 159,918.16 |
| | 74,412.07 |

Consisting of:

Additions—

(a) Loss from sale of sundry lots — $4,071.74

Shown by respondent as — 3,971.74

— 100.00

Tax at 10% — 10.00

(b) Respondent apportioned deficits of non-federal companies to federal and non-federal companies alike—should have been apportioned to non-federal companies only — 5,102.46

(c) Respondent did not allow as a credit interest due from U. S. Government under Federal Control Act — 69,300.54

— 74,413.00

Deductions—

(d) Respondent assigned the exemption of $2,000 on basis of erroneous assignment of deficits referred to in (b) — .93

— 74,412.07

1919

| | |
|---|---|
| Petitioner's proposal—to be refunded | $126,497.04 |
| Respondent's proposal—" " " | 94,375.01 |
| **Difference** | 32,122.03 |

Consisting of:
Additions—

(a) Respondent apportioned deficits of non-federal companies to federal and non-federal companies alike— should have been apportioned to non-federal companies only _____ 3,352.81

(b) Respondent did not allow as a credit interest due from U. S. Government under Federal Control Act_ 28,141.19

(c) Respondent allowed as a credit to federal companies interest on U. S. Liberty Bonds amounting to $31,420.93 earned by non-federal companies and included in their gross income _____ 628.41

32,122.41

Deductions—

(d) Respondent assigned the exemption of $2,000 on basis of erroneous assignment of deficits referred to in (a) _____ .38

$32,122.03

Relative to items (a), (b) and (c) for 1917, it is to be noted that the petitioner contends that these amounts are refundable to certain corporations. These corporations were not consolidated with the Great Northern Railway Co. for 1917, and the Board is in possession of no evidence that the Commissioner has determined deficiencies against them for 1917. The Board has no jurisdiction to determine refunds due to them. The elimination of these three items from petitioner's claim for a refund for the year 1917 results in an admitted deficiency for that year based upon the findings of fact and opinion of the Board of $3,673.52.

The respondent's redetermination of the alleged deficiency for 1917 based upon the Board's findings of fact and opinion shows an over-assessment of tax of $25,695.94. This computation was made upon the erroneous supposition that an outstanding assessment of $30,-065.33 had been paid. The correction of this error shows that the respondent has redetermined a deficiency in payment for 1917 of $4,369.39. The difference between the recomputations of the petitioner and the respondent are therefore found to be as follows:

| | |
|---|---|
| Petitioner: Deficiency in payment for 1917 | $3,673.52 |
| Respondent: Deficiency in payment for 1917 | 4,369.39 |
| **Difference** | 695.87 |

which is the amount of the items (d), (e), and (f) as shown by the "Statement of Differences," above.

Item (d) is explained as follows:

A certain assessment was made against the petitioner in May, 1926, which assessment was paid on May 16, 1927, together with interest upon the assessment in the amount of $347.93. In making his redetermination of a deficiency for 1917 the respondent has included as a part of the tax liability interest in the amount of $347.93. The respondent now admits that he was in error in including such amount in the tax liability. He contends, however, that the amount of the interest was legally due and that there is no basis for the refund thereof since the full amount of the tax due for the year 1917 has not been paid. We think that this contention is correct and that the deficiency in payment redetermined by the respondent for 1917 of $4,369.39 should be reduced by the amount of $347.93 and that the correct deficiency in payment for 1917 is the amount of $4,021.46.

With respect to the deficiency redetermined for the year 1918, the respondent is in error with respect to item (a) involving tax in the amount of $10. Items (b) and (d) for 1918 and items (a) and (d) for 1919 have reference to the method used by the respondent in apportioning the taxes between the Director General of Railroads and the petitioner. The Director General in his agreement with the petitioner, and other affiliated corporations which were taken under Federal control, agreed to pay all taxes except the so-called war taxes and some other taxes and special assessments that are not involved here, and the Revenue Act of 1918 defined the war taxes and the Board has decided that the effect of this agreement and of the Revenue Act was to require those companies that were under Federal control to pay income tax at the rate of 10 per cent for the year 1918 and 8 per cent for the year 1919, while corporations that were not under Federal control paid a tax of 12 per cent for 1918, and 10 per cent for 1919. For the purpose of determining the Federal income tax payable by the Director General of Railroads it was necessary to apportion out the income taxes between those companies that were under Federal control and those that were not.

In the determination of the income tax payable by the Director General of Railroads the income and deficits of the companies under Federal control were determined and the Director General was assessed 2 per cent on that income, which amount was paid. In other words, the Director General paid 2 per cent on the income of the companies under Federal control, as shown by the income-tax returns that were filed in due course. No part of the income of the companies that were not under Federal control—about twelve or fifteen of

them—was included in determining the Director General's apportionment and, likewise, if any of those companies had a deficit no part of the deficit was included in the Director General's apportionment.

In the redetermination of the deficiencies for 1918 and 1919 the petitioner has separated the affiliated companies into two groups; first, those under Federal control, and, second, those not under Federal control, and has computed the deficiencies of each group at the rates appertaining to that group. This has redounded to the benefit of the petitioner.

The respondent, on the other hand, has credited the deficits of the companies not under Federal control equally or proportionally to all of the companies of the affiliated group and thereby reduced the income of the companies under Federal control and, consequently, the amount of tax to be paid by the Director General, and then has credited the Director General with what he has paid and credited the petitioner with what it has paid. The effect of this treatment on the part of the respondent is to increase the petitioner's tax for the year 1918 by $5,102.46 and for the year 1919 by $3,352.81 over that shown by the petitioner's method of computation.

It is contended on behalf of the respondent that the basis of allocation used by him in determining the deficiencies for the years 1918 and 1919 is the one that has been consistently followed by him in such cases and that it is the only correct method under the law.

We sustain the contentions of the respondent upon this point. The affiliated corporations made a single return for each calendar year. It is immaterial that some of them were under Federal control and some not under Federal control. The consolidated net income should be allocated to the constituent companies without regard to the fact that some were under Federal control and some were not. This the respondent has done. This ruling disposes of items (b) and (d) under 1918 and items (a) and (d) under 1919 of the " Statement of Differences."

The next item (item (c) under 1918 and item (b) under 1919) has reference to whether the petitioner is entitled to deduct from gross income interest due from the United States Government under the Federal Control Act in the amount of $693,005.39 for 1918 (involving tax of $69,300.54) for 1918, and $351,764.86 (involving tax of $28,141.19) for 1919.

In its petition filed with the Board the petitioner assigned the following error with respect to this item:

The error of the Commissioner in determining that the taxable income of the taxpayer for the year 1918 should be increased in the sum of $693,005.39 and that the taxable income for the year 1919 should be decreased in the sum of $1,218,434.89 in order that the account representing interest due from the

Director General of Railroads for those years might correspond with what is alleged to have been allowed by the Director General in final settlement, such error resulting in proposed additional taxes for the year 1918 of $69,300.54, in proposed reduced taxes for the year 1919 of $97,474.79, and proposed additional taxes for the year 1921 of $52,542.95.

The facts alleged in the petition in support of this assignment of error were:

(a) The contract between the Director General of Railroads and the taxpayer, dated December 30, 1918, covering operations during Federal control, contained the following provision:

" Sec. 4(a) * * * Balances of the above accounts shall be struck quarterly on the last days of March, June, September and December of each year, and the cash balance found on such adjustments to be due either party shall be then payable and, if not paid, shall bear interest at the rate of 6 per cent, per annum, unless the parties shall agree upon a different rate. * * * "

(b) No quarterly balances were struck and the only settlement of accounts made between the parties was the final settlement, evidenced by the agreement dated April 22, 1921.

(c) Under the final settlement the Director General paid to the taxpayer the lump sum of $6,500,000.

(d) The amount due either party on any particular account or the amount of interest due thereon was never determined as all such matters became merged in the lump sum settlement finally agreed upon.

(e) Complying with instructions from the Interstate Commerce Commission, the taxpayer accounted for the $6,500,000 received from the Director General by crediting the same to Profit and Loss after first closing off to that account all accounts with the Director General, carried on its books.

(f) In its accounts for the year 1919 the taxpayer accrued as income the sum of $1,570,199.75, representing the estimated amount of interest due the taxpayer from the Director General for the years 1918 and 1919 and reported the same for taxation as taxable income for the year 1919.

(g) During the years 1918 and 1919 the accounts of the taxpayer were kept in accordance with the uniform system of accounts prescribed by the Interstate Commerce Commission.

(h) In computing the taxable income of the taxpayer for the years 1918 and 1919 the Commissioner increased the taxable income for the year 1918 in the amount of $693,005.39, being the amount of interest which it is alleged the Director General's books showed he had paid the taxpayer for that year, and reduced the taxable income for the year 1919 in the amount of $1,218,434.89, being the difference between the sum of $1,570,199.75, accrued on taxpayer's books for that year, and $351,764.86, the amount of interest which it is alleged the Director General's books showed he had paid the taxpayer for that year.

The respondent neither admitted nor denied the foregoing allegations of fact and made no new allegations with respect to this point.

When the decision was rendered in this case, the following facts were found:

The contract between the Director General and the petitioner dated December 30, 1918, covering operations during Federal control contained the following provision:

" Sec. 4(a) * * * Balances of the above accounts shall be struck quarterly on the last days of March, June, September and December of each year,

and the cash balance found on such adjustments to be due either party shall be then payable and, if not paid, shall bear interest at the rate of 6 per cent per annum, unless the parties shall agree upon a different rate. * * * "

No quarterly balances were struck between the Director General and the petitioner and the only settlement of accounts made between the parties was the final settlement evidenced by agreement dated April 22, 1921.

In its accounts for the year 1919 the petitioner accrued as income the sum of $1,570,199.75, representing the estimated amount of interest due the petitioner from the Director General under the contract of December 30, 1918, and reported the same for taxation as taxable income for the year 1919.

As stated before, no agreement was reached between the petitioner and the Director General as to any particular item or items contained in any statement of claim made by either the petitioner or the Director General, or as to the application of the payment of $6,500,000 to any such item or items.

Complying with instructions from the Interstate Commerce Commission, petitioner accounted for the $6,500,000 received from the Director General by crediting that sum to its Profit and Loss Account for the year 1921 after first closing off to that account all accounts with the Director General, including the account representing interest due from the Director General.

The respondent computed the amount of interest due the petitioner from the Director General for the year 1918 at $693,005.39 and for the year 1919 at $351,764.86, these computations being based upon the allocation made by the Director General of the lump-sum settlement of $6,500,000, and in the determination of the proposed deficiency the respondent added $693,005.39 to the taxable income of the petitioner for the year 1918 and reduced the taxable income for the year 1919 in the sum of $1,218,434.89.

The decision of the Board on this question reads:

*Interest due from Director General Under Federal Control Agreement.*— Section 4 (a) of the contract of the petitioner with the Director General provided that balances of certain accounts therein and previously mentioned in the contract should be struck quarterly and that such balances should bear interest at a specified rate. The balances in question were not in fact struck. The petitioner accrued nothing on its books in the year 1918 on account of interest on such balances. It, however, accrued in 1919 interest due it by the Director General in the amount of $1,570,199.75. The respondent determined that the interest on such quarterly balances accruable in the year 1918 was $693,005.39 and in the year 1919 $351,764.86. The petitioner desires to return its income from this source in accordance with its books and to adjust any differences in the year in which it made final settlement with the Director General.

An examination of the contract indicates that all of the facts necessary for a determination of the quarterly balances were in existence and known or capable of being known at the end of each quarter. There is no evidence to indicate that these balances depended upon any contingencies or any basic facts to come into existence in later years. We are of the opinion that this issue is controlled the same as the preceding one by the decision of the Board in *Illinois Terminal Company, supra.* The action of the respondent upon this point is sustained.

In both the notice of settlement filed by the petitioner and the alternative notice of settlement filed by the respondent, the interest in question was included in determining net income in conformity

with the Board's decision. The petitioner, however, before computing the tax due on the net income as determined, deducted therefrom the interest amounts which it had included as taxable income, contending that this represented interest on an obligation of the United States and, therefore, was exempt from taxation under the provisions of section 236 (a) which reads as follows:

That for the purpose only of the tax imposed by section 230 there shall be allowed the following credits:

(a) The amount received as interest upon obligations of the United States and bonds issued by the War Finance Corporation, which is included in gross income under section 233.

When the matter came on for hearing before the Board, counsel for the petitioner was asked the following question and received the following reply:

The MEMBER. Let me ask, Mr. Plunkett, if that question was argued at all before the Board?

Mr. PLUNKETT. No, it was not, your honor.

Later, counsel for petitioner was asked a similar question and replied as follows:

The MEMBER. Mr. Plunkett, relative to that point, what was the contention of the Petitioner before the Board at the time of the hearing? Was it contended that this interest accruing upon the books in 1919 was income in that year, or just what was the contention?

Mr. PLUNKETT. Yes, sir; it was our contention, your honor, that that amount accruing on the books was income for the year 1919, and the Commissioner contended that a smaller amount was income for 1919 and another sum was the income for 1918. Now, we are contending that, if that is true, that amount should be allowed as a credit; if it is included in the gross income, as income, it should be allowed as a credit, because it is interest on United States obligations.

I will be frank to say that we did not deduct it as a credit from our return in 1919, the year in which we included. We didn't think about it. But we do say that it is allowable as a credit under Section 236-A.

The contract under and by virtue of which the interest was paid to the petitioner was submitted in evidence as Exhibit 28. The pertinent part of that contract reads:

Overdue installments of compensation, or balances thereof, provided for in this section shall bear interest from maturity at the rate of five per cent per annum, except that if the Director General shall, prior to the execution of this contract, have loaned the Companies any money the installments of compensation overdue at the date of the execution thereof shall bear interest from maturity at the same rate as that charged to the Companies on such loans.

From the foregoing it is apparent that the question whether the interest receivable by the petitioner under its Federal control contract with the Director General constituted a credit was not put in issue by the pleadings filed or at the time of the hearing of the proceeding on the merits by the Board. The petitioner did not in its original returns

for 1918 and 1919 claim any credit against net income in respect of any interest due from the Director General. Pursuant to notice given to the parties to this proceeding by the Board, and after affording the parties full and complete opportunity to be heard, all issues raised and urged at the hearing were decided and in the decision thereof the Board held that the interest receivable should be allocated between the years 1918 and 1919 in a particular manner, namely, that $693,005.39 was income for the year 1918 and $351,764.86 for the year 1919. There was no allegation of error by the petitioner that the Commissioner had failed in his determination to allow the amounts of interest in question as credits against net income, and to decide this question would necessitate a consideration anew of the case and a determination upon an issue which has not been properly raised. In the absence of an allegation of error properly and timely raised as to the question which the petitioner now seeks to inject into the case and have the Board decide upon redetermination under Rule 50, the proposed redetermination of the Commissioner upon this point is sustained. The parties are heard under Rule 50 only for the purpose of enabling the Board to compute the deficiency or overpayment in accordance with the decision of the Board of the issues properly raised and presented at the hearing of the proceeding on the merits and new issues, other than those relating to the computation of the tax upon the basis of the Board's findings of fact and opinion, may not be raised and urged on hearing on settlement of the deficiencies under the provisions of Rule 50 of the Board's rules of practice. *Automatic Sprinkler Co. of America*, 7 B. T. A. 674. Orders entered in *Excelsior Motor Mfg. & Supply Co.*, Docket No. 4686, July 5, 1927, approved by the Board upon review July 16, 1927; *Metropolitan Business College*, Docket No. 5717, decided by the Circuit Court of Appeals, Seventh Circuit, 24 Fed. (2d) 176.

The last item for consideration is item (c) in the "Statement of Differences" for the year 1919. This point is decided in favor of the petitioner.

We therefore sustain the respondent's contention with respect to the deficiency for the year 1918 with the exception of item (a), refererred to in the "Statement of Differences," and we sustain the respondent's contention with respect to the amount refundable for the year 1919 with the exception of item (c) in the "Statement of Differences." Consonant therewith it is

ORDERED AND DECIDED that there is an overassessment of $26,043.77 for the year 1917, which should be abated, and a deficiency in payment of tax for the same year of $4,021.46; that the deficiency for 1918 is redetermined to be $159,908.16; and that for the year 1919 there has been an overpayment of tax of $95,003.42.