## COMMISSIONER OF INTERNAL REVENUE v. WEST PRODUCTION CO.

## WEST PRODUCTION CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9781.

Circuit Court of Appeals, Fifth Circuit.

July 7, 1941.

Warren F. Wattles and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Robert Ash, of Washington, D. C., and J. A. Platt, of Houston, Tex., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

These petitions to review are from a judgment of the Board of Tax Appeals,[1] and involve income taxes for the calendar year 1932. The questions presented arise from two distinct transactions, each of which will be discussed separately.

The Commissioner's appeal involves income taxes arising from the transfer to the Humble Oil & Refining Company of a one-half interest in twelve mineral leases upon lands in Texas, together with personal property and equipment situated thereon. The consideration for the transfer of the properties was $3,000,000 in cash, a covenant to pay $17,000,000 in oil payments from production, and a certain over-riding royalty on nine of the twelve leases. The conveyance was made by West Production Company and its partner, H. R. Cullen, each of whom owned a one-half interest in the property conveyed and who shared the proceeds equally.

Prior to the decision of this court in the companion case of Cullen v. Commissioner of Internal Revenue, 5 Cir., 118 F.2d 651 (involving the income of the other partner from this same transaction), the first issue in this case was whether depletion was allowable upon the entire cash payment and upon all of the oil payments, or whether it was allowable only upon the portion of the cash payment and of the oil payments derived from the nine leases upon which an over-riding royalty was retained. Both

---

sides recognize that, under the Cullen case, percentage depletion was allowable upon all payments attributable to the nine leases which were in effect sub-leases, but that no depletion could be taken upon the portion of the income attributable to the three leases which were sold outright.

The remaining question arising under this transaction concerns the propriety of the taxpayer's deduction of the cost to it of the equipment and other personal property involved in the transfer. The taxpayer now acknowledges that, under the holding of the Cullen case, supra, it was not entitled to a deduction for the whole of said cost on the nine tracts upon which over-riding royalties were retained, but only for the amount allowed in that case. The taxpayer contends that since the Commissioner in his determination allowed the recovery of the whole cost, made no issue of it in the pleadings before the Board of Tax Appeals, but only in his recomputation of the deficiency under Rule 50 when it was then too late to raise the issue, the decision of the Board should be reversed on this point, with directions to allow the whole costs.

 We think the Board's decision disallowing these costs should not stand. Even in administrative proceedings where the rules of procedure are relaxed, the party moved against has the right to be heard, the essence of which is to be fully advised of the allegations comprising the claim against him.[2] The weight of authority also sustains the position that new issues cannot be raised at the hearing under Rule 50;[3] and the prima facie presumption of correctness attending the Commissioner's determination that this deduction was properly taken met no offsetting proof at the hearing. The practice of the Board is to permit a hearing under Rule 50 for purposes of preparing the computation in accordance with issues raised, presented, and determined at the hearing on the merits, and this method should have been followed in this case. We cannot agree with the taxpayer that, because the issue was not made before the hearing under Rule 50, it

must be regarded as waived, and, because waived, the taxpayer must in redetermination be allowed the whole costs. Upon reversal, the matter as to this issue will be left open, and, but for the decision in the Cullen case, we should direct that it be tried before the Board. In view of that case, which has settled the amount to be allowed, and since the parties to this appeal in their briefs and in the argument have recognized that this is so, the judgment as to this issue will be, that the finding of the Board is reversed as to it, with directions to allow the taxpayer, on redetermination, the same amount on this item that was allowed in Cullen's case.

The final question for our decision is whether property purchased by the mortgage-holder at a foreclosure sale, which is of a fair market value in excess of the amount paid to purchase the indebtedness and in excess of the successful bid price, constitutes a purchase by the buyer which is not taxable, or whether it is a completed transaction of investment and liquidation resulting in a legitimate profit subject to taxation. This taxpayer contends that it simply made a good purchase in that it bought, for a small price, property having a greater but unrealized value; and that, if it is mistaken in this view, the purchase price paid for the property is controlling, as a matter of law, as to the fair market value thereof.

The transaction was this: R. S. Sterling negotiated a loan with a bank for $800,000, pledging various properties as security under a deed of trust. At a time during the tax year when $118,891.98 had been paid on the loan, and when the taxpayer was assured that certain of the pledged property could be sold for a substantial sum, it purchased the loan note from the bank for $324,039. It received the amount of the payments then made on the loan plus the $165,000 realized from the sale of the part of the property as planned, and thereby acquired the note, secured by the remainder of the property, for $324,039 less $283,891.98, or for a net cost of $40,147.02. The fair market value of the remaining prop-

---

[2] Jefferson Electric Co. v. N. L. R. B., 7 Cir., 102 F.2d 949; Swift & Co. v. N. L. R. B., 10 Cir., 106 F.2d 87; N. L. R. B. v. Piqua Munising Wood Products Co., 6 Cir., 109 F.2d 552; Moore's Federal Practice, Vol. 1, page 440.

[3] Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; Metropolitan Business College v. Blair, 7 Cir., 24 F.2d 176; O'Meara et al. v. Commissioner, 10 Cir., 34 F.2d 390; Great Northern Railway Co. v. Commissioner, 10 B.T.A. 1347, 1356.

**12**

erty, which the taxpayer acquired by foreclosing the deed of trust and by deed and delivery without foreclosure, was stipulated to be $101,522.77. The Board of Tax Appeals held that the net increase of the fair market value of the assets so acquired over the net amount paid for the mortgage note, in the sum of $61,375.75, was taxable income.

Article 193 of Treasury Regulations 77, promulgated under the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 482, was relied upon by the Board to reach its decision. This regulation provides that, where a creditor buys the pledged or mortgaged property, the loss or gain thereby realized is measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property and the fair market value of the property. A regulation identical with this has been promulgated under every revenue act since that of 1926; the law construed has not been changed by legislative act, nor has the interpretation been changed by judicial decision. Conformity with Congressional intent is presumed, and the regulation must be given the force and effect of law.[4] The Board's application of the regulation was proper and must be upheld.[5]

The bid price for property under foreclosure is presumed to be the fair market value of the property, under Article 193, supra, in the absence of clear and convincing proof to the contrary. The stipulation of the parties, however, satisfies the burden of proof and is accepted as conclusive. The taxpayer is in no position to complain when the amount which he has stated to be proper is taken as correct.[6]

Upon the petition of the Commissioner the judgment is reversed, and upon the petition of the taxpayer the judgment is affirmed in part and reversed in part; and the causes are remanded to the Board of Tax Appeals for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

[4] United States v. Dakota-Montana Oil Company, 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893; Commissioner v. Pan-American Life Insurance Co., 5 Cir., 111 F.2d 366.

[5] Cf. Brown v. United States, 3 Cir., 95 F.2d 487; Malden Trust Co. v. Commissioner, 1 Cir., 110 F.2d 751; Hadley Falls Trust Company v. United States, 1 Cir., 110 F.2d 887; Commissioner v. National Bank of Commerce of San Antonio, 5 Cir., 112 F.2d 946.

[6] Brown v. United States, supra.