MOSHER MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1886.   Promulgated June 7, 1927.

1. The real estate involved herein was sold in the year 1919 and not in the year 1918 as claimed by the petitioner. Therefore, no part of the profit arising from such a sale may be included in the petitioner's invested capital for the year 1919.

2. Certain alleged worthless debts *held* to be proper deductions in computing the petitioner's net income for the year 1920.

*G. Drummond Hunt, Esq.,* and *Loyd B. Smith, C. P. A.,* for the petitioner.

*Robert A. Littleton, Esq.,* for the respondent.

This proceeding is for the redetermination of deficiencies for the years 1919 and 1920 in an amount less than $10,000.

FINDINGS OF FACT.

The petitioner is a corporation organized about the year 1908, under the laws of the State of Texas, with its principal office and place of business at Dallas, Tex., and it is and was at all times herein mentioned, engaged in business at that place. From some time in the year 1917, and until May 1, 1918, all of the capital stock of the corporation was owned and held by the following persons:

| | |
|---|---|
| W. S. Mosher. | Grace M. Jones. |
| Mrs. J. E. Mosher. | T. J. Mosher. |
| Miss M. E. Mosher. | Thomas J. Jones. |
| N. S. Mosher, Trustee. | |

W. S. Mosher, T. J. Mosher, M. E. Mosher and Grace M. Jones are brothers and sisters, Mrs. J. E. Mosher is their mother, and Thomas J. Jones is the husband of Grace M. Jones.

For many years prior to the early part of the year 1916, one Ellingsworth was in the employ of the petitioner as a bookkeeper, and was the owner of a few shares of its capital stock. He held this stock under an agreement that if he should leave the employ of the corporation he would sell the stock to W. S. Mosher as trustee for the other stockholders, at its book value. Ellingsworth left the corporation in the year 1916, and when W. S. Mosher attempted to exercise the option a dispute arose as to what Ellingsworth should receive, due to the fact that certain real estate owned by the corporation had greatly appreciated in value. This real estate had been acquired prior to March 1, 1913, at a cost of $24,416.09 and on that date it had a fair market value of $153,739. Ellingsworth's stock was finally sold to W. S. Mosher as trustee some time in the year 1917.

After the purchase of Ellingsworth's stock, and prior to May 1, 1918, it was decided by the stockholders of the corporation at an informal meeting, that for business reasons stock should be sold to persons other than members of the Mosher family. However, in order to avoid any further disputes such as had occurred with Ellingsworth, it was also decided to separate the real estate of the corporation from the other assets, and to sell it to W. S. Mosher as trustee for all of the stockholders for $153,739, at which amount it had been carried on the corporation's books since about June 1, 1917. W. S. Mosher agreed to give his note to the corporation for $153,739, with interest at 6 per cent per annum. The corporation also agreed to lease the real estate from W. S. Mosher and to pay for the use thereof an annual rental equal to 6 per cent of $153,739, and to pay the taxes on the real estate. The agreement mentioned was not reduced to writing.

On May 1, 1918, ten shares of the stock of the corporation were sold to Fred Hicks and ten shares to J. M. Shaw, both employees

thereof, and on that date two certificates of stock were issued by the corporation to W. S. Mosher, trustee, one of which was transferred by him to Hicks and the other to Shaw, with the endorsement thereon "subject to the conditions agreement this date." The conditions of the agreement mentioned were that Hicks and Shaw would not sell their stock without giving W. S. Mosher a six-months option to purchase it; that the value of their stock was to be determined by the value of the assets of the corporation exclusive of the real estate; that the real estate would be separated from the assets of the corporation, and that in lieu thereof there would be substituted W. S. Mosher's note for $153,739. During the period May 1, 1918, to December 31, 1918, inclusive, no money was actually paid by the corporation to W. S. Mosher for the use of the real estate mentioned, nor was any money paid by Mosher to the corporation as interest on the amount of $153,739. The corporation paid the taxes on the real estate for the year 1918.

On January 3, 1919, at a meeting of the board of directors of the petitioner corporation, W. S. Mosher, T. J. Mosher, M. E. Mosher and T. J. Jones being present, the following resolution was adopted:

RESOLUTION OF THE BOARD OF DIRECTORS OF MOSHER MANUFACTURING COMPANY:—

Whereas, heretofore prior to the first day of June, 1918, it had been arranged by this company to sell and convey the real estate holdings of this company in the city of Dallas, exclusive of all buildings, machinery, fixtures and other improvements thereon, to W. S. Mosher, with a view of separating the real estate holdings of this company in the city of Dallas from its other property and plant; it being the purpose and intention to secure other real estate in or near the city of Dallas, and ultimately to remove the plant to such new location. And, whereas, it has been heretofore arranged, prior to June 1, 1918, that the said W. S. Mosher, for the use of himself and his associates, should have an option on the said real estate holdings in the city of Dallas at the book value of such holdings as of June 1, 1918. And, whereas, the book value of the said real estate, as of June 1, 1918, has been ascertained to be the sum of one hundred and fifty-three thousand, seven hundred and thirty-nine ($153,739.00) dollars.

Now Be It Resolved By the Board of Directors, That the vice-president of this company, joined by the acting secretary, shall, in the name of this company, execute to W. S. Mosher a proper deed of conveyance conveying to the said W. S. Mosher all of the real estate holdings of this company in the city of Dallas for the consideration of the said sum of one hundred and fifty-three thousand, seven hundred and thirty-nine ($153,739.00) dollars; such conveyance reserving all buildings, machinery, fixtures and other improvements on the said property, with the right to remove the same within a reasonable time after the expiration of the lease to be made by the said W. S. Mosher to Mosher Manufacturing Company; the said consideration to be paid according to the terms of the vendor's lien note for the said sum of $153,739, payable ten (10) years after date, with interest thereon at the rate of six per cent per annum, the interest payable semi-annually; together with the privilege of the prepayment of the full amount, or of any multiple of ten thousand ($10,000) dollars, on the

first day of June or the first day of January of any year, sixty days previous written notice of such prepayment having been given; the vendor's lien is to be retained to secure the payment of the said note, and also the said W. S. Mosher is to execute, when requested, a deed of trust upon the said property, with power of sale, in the usual form, to further secure the payment of the said vendor's lien note.

AND BE IT FURTHER RESOLVED, That this company be authorized to accept from the said W. S. Mosher a lease for the said real estate at an annual rental of nine thousand, two hundred and twenty-four and 34/100 ($9,224.34) dollars, plus all taxes accruing against the said property; such rental to be paid at the end of each six months, corresponding to the dates of interest payments on the said vendor's lien note; such lease to extend for the said term of ten years, but may be terminated prior to the expiration of said ten years if this company shall secure and remove to a new location in or near the city of Dallas; and with the privilege on the part of the lessee of removing from the said premises, within a reasonable time after the termination of the lease, all buildings, machinery, fixtures and other improvements.

Meeting adjourned.

(Signed)        THOMAS J. JONES,
                        Acting Secretary.

On January 3, 1919, the corporation, pursuant to the resolution of the same date above set forth, executed and delivered to W. S. Mosher, a deed to the real estate hereinbefore mentioned, which deed is in the words and figures following:

THE STATE OF TEXAS,
        County of Dallas.

KNOW ALL MEN BY THESE PRESENTS: That Mosher Manufacturing Company, a private corporation organized under the laws of the State of Texas, and having its domicile in the City of Dallas, in Dallas County, Texas, in consideration of the sum of one dollar to it paid, and in further consideration of the sum of one hundred and fifty-three thousand, seven hundred and thirty-nine ($153,739) dollars, to be paid according to the terms of a certain vendor's lien note of even date herewith, executed by W. S. Mosher to Mosher Manufacturing Company, payable ten (10) years after date, with interest at the rate of six per cent per annum, the interest payable semi-annually, with the privilege of prepayment of the full amount, or of any multiple of ten thousand ($10,000) dollars, on the first day of June or the first day of January of any year, upon sixty days previous written notice, do by these presents grant, sell and convey unto the said W. S. Mosher, of Dallas County, Texas, the following described real estate situated in the City of Dallas, in Dallas County, Texas, to-wit:

FIRST TRACT: Beginning at a point where the east line of Austin Street intersects the south line of the right of way of the Gulf, Colorado & Santa Fe Railway switch, which runs from the main line to Water Street; Thence in a southeasterly direction, with the east line of said Austin Street, about 272 feet to the center of Mill Creek; Thence in an easterly direction, up the center of said Mill Creek and with Cockrell's line, to the division line between the Sickles and Cockrell land; Thence in a northwesterly direction, with said division line, about 10 feet to the southwest line of Lamar Street; Thence in a westerly and northwesterly direction, with the southwest and west line of said Lamar Street to the south line of said right of way of said Gulf, Colorado

& Santa Fe Railway; Thence in a westerly direction, with the south line of said right of way, about 213 feet to the place of beginning; being all the land lying between Austin and Lamar Streets and between the said Gulf, Colorado & Santa Fe Railway right of way and Mill Creek and Cockrell's land, save and except a strip 30 feet in width out of said tract, being fifteen feet each side of the center of the main track of the Dallas Rapid Transit Railway Company as it runs through said tract, the northeast line of said right of way intersecting the west line of Lamar Street at a point 42 feet southeast of the right of way of the Gulf, Colorado & Santa Fe Railway, and intersecting the south line of the right of way of said Gulf, Colorado & Santa Fe Railway at a point 41 feet west of the west line of said Lamar Street; and being the same land conveyed by Luther Rees and wife to Theodore Mosher by deed dated December 1, 1889, recorded in book 134, page 323, of the deed records of Dallas County, and later conveyed by Mrs. J. E. Mosher to Mosher Manufacturing Company.

SECOND TRACT: Being a part of blocks numbers four hundred and nineteen (419) and four hundred and twenty-one (421), of the City of Dallas, and comprising two pieces as follows: Beginning at the intersection of the north line of Cadiz Street and the east line of the Dallas Terminal right of way; Thence east along the north line of Cadiz Street about 320 feet to the west line of Lamar Street; Thence northwardly, along the west line of Lamar Street, 307 5/10 feet to Mill Creek, proceeding thence in the same line 517 feet to the southeast corner of Mosher Manufacturing Company's lot; Thence westwardly, along Mosher's line to the center of Mill Creek; Thence down Mill Creek to the east line of the Dallas Terminal right of way; Thence southwardly, along the said right of way, to the place of beginning; containing about five (5) acres. Also beginning in the center of Mill Creek on the west line of the eastern branch of the Dallas Terminal right of way, immediately south of Mosher's Foundry; Thence in a southerly direction 287 feet to the intersection of the right of way of the two branches of said Terminal Railway; Thence northwardly along the east line of the western branch of said right of way, 355 feet to the center of Mill Creek; Thence up said Creek to the beginning; containing about one-half (½) acre. The said second tract, comprising said two pieces of land, being the same property conveyed by Clarence M. Cockrell to Mrs. J. E. Mosher by deed dated January 1, 1903, and later conveyed by Mrs. J. E. Mosher to Mosher Manufacturing Company.

But there is reserved from this conveyance all the buildings, machinery, fixtures and other improvements on the said property, with the right to remove the same within a reasonable time after the expiration of the lease to be made by the said W. S. Mosher to Mosher Manufacturing Company.

To HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said W. S. Mosher, his heirs and assigns forever. And the grantor does hereby bind itself and its successors to warrant and forever defend, all and singular, the said premises unto the said W. S. Mosher, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof. The vendor's lien is expressly retained against the above described property to secure the payment of the said note and all interest thereon according to its terms. The said note is to be further secured by a deed of trust upon the said property, with power of sale, in the usual form, to be executed by the said W. S. Mosher when requested.

This conveyance is executed in pursuance of a certain resolution of the board of directors of Mosher Manufacturing Company duly passed on the 3rd day of January, 1919, which said resolution is in words and figures following, to-wit:

" Whereas, heretofore prior to the first day of June, 1918, it had been arranged by this company to sell and convey the real estate holdings of this company in the city of Dallas, exclusive of all buildings, machinery, fixtures and other improvements thereon, to W. S. Mosher, with a view of separating the real estate holdings of this company in the city of Dallas from its other property and plant; it being the purpose and intention to secure other real estate in or near the City of Dallas, and ultimately to remove the plant to such new location. And whereas, it has been heretofore arranged, prior to June 1, 1918, that the said W. S. Mosher, for the use of himself and his associates, should have an option on the said real estate holdings in the city of Dallas at the book value of such holdings as of June 1, 1918. And, whereas, the book value of the said real estate, as of June 1, 1918, has been ascertained to be the sum of one hundred and fifty-three thousand, seven hundred and thirty-nine ($153,739.00) dollars."

" Now Be It Resolved by the Board of Directors, That the vice-president of this company, joined by the acting secretary, shall, in the name of this company, execute to W. S. Mosher a proper deed of conveyance conveying to the said W. S. Mosher all of the real estate holdings of this company in the city of Dallas for the consideration of the said sum of one hundred and fifty-three thousand, seven hundred and thirty-nine ($153,739.00) dollars; such conveyance reserving all buildings, machinery, fixtures and other improvements on the said property, with the right to remove the same within a reasonable time after the expiration of the lease to be made by the said W. S. Mosher to Mosher Manufacturing Company; the said consideration to be paid according to the terms of a vendor's lien note for the said sum of $153,739, payable ten (10) years after date, with interest thereon at the rate of six per cent per annum, the interest payable semi-annually; together with the privilege of the prepayment of the full amount, or of any multiple of ten thousand ($10,000) dollars, on the first day of June or the first day of January of any year, sixty days previous written notice of such prepayment having been given; the vendor's lien is to be retained to secure the payment of the said note, and also the said W. S. Mosher is to execute, when requested, a deed of trust upon the said property, with power of sale, in the usual form, to further secure the payment of the said vendor's lien note."

In Witness Whereof, Mosher Manufacturing Company has caused this instrument to be executed by its vice-president and its acting secretary, and has caused the corporate seal of the said company to be affixed, this 3rd day of January, 1919.

Mosher Manufacturing Company,<br>
By T. J. Mosher, <i>Vice-President,</i>

Attest:

Thomas J. Jones, *Acting Secretary.*

The State of Texas,
    *County of Dallas*

Before me, J. D. Harman, a Notary Public in and for Dallas County, Texas, on this day personally appeared T. J. Mosher, vice-president, and Thomas J. Jones, acting secretary, of Mosher Manufacturing Company, known to me to be the persons whose names are subscribed to the foregoing instrument,

and acknowledged to me that they each executed the same for the purposes and consideration therein expressed, and as the act and deed of the said Mosher Manufacturing Company.

Given under my hand and seal of office, this 3rd day of January, 1919.

(Signed)        J. D. HARMAN,
Notary Public, Dallas County, Texas.

In consideration of the conveyance to him of said real estate, W. S. Mosher executed and delivered to the corporation a note as follows:

DALLAS, TEXAS, January 3, 1919.

$153,739.00

Ten (10) years after date, for value received, I promise to pay to Mosher Manufacturing Company or order the sum of one hundred and fifty-three thousand, seven hundred and thirty-nine ($153,739.00) dollars, with interest thereon from date until paid at the rate of six per cent per annum, the interest payable semi-annually; both principal and interest payable at Dallas, Texas.

This note is given in payment of certain real estate in block number four hundred and nineteen (419) and block number four hundred and twenty-one (421) in the city of Dallas, in Dallas County, Texas, on South Lamar Street, Austin Street and Cadiz Street, this day conveyed to W. S. Mosher by Mosher Manufacturing Company; the said deed reserving, however, all buildings, machinery, fixtures and other improvements on the said property; and the vendor's lien is retained in the said deed to secure the payment of this note, and is hereby acknowledged.

All past due interest on this note shall bear interest at the rate of eight per cent per annum.

The maker hereof shall have the privilege of the prepayment of this note in full, or of any multiple of ten thousand ($10,000) dollars, on the first day of June or the first day of January of each year, sixty days previous written notice of such prepayment having been given.

This note is to be further secured by a deed of trust upon the said property to be executed by W. S. Mosher when requested.

(Signed)        W. S. MOSHER.

(Revenue Stamps, $30.76.)

On the 3d day of January, 1919, the said W. S. Mosher and the other members of the Mosher family, who were stockholders of the corporation, executed the following written instrument:

THE STATE OF TEXAS,
        County of Dallas.

Whereas, by deed dated January 3, 1919, Mosher Manufacturing Company did convey to W. S. Mosher certain real estate in blocks 419 and 421, of the City of Dallas, in Dallas County, Texas, on South Lamar Street, Austin Street and Cadiz Street; the said deed reserving all buildings, machinery, fixtures and other improvements on the said property, the said deed retaining the vendor's lien to secure a certain note of even date therewith for the sum of one hundred and fifty-three thousand, seven hundred and thirty-nine, ($153,739) dollars; reference to the said deed and note being hereby made.

Now this instrument is for the purpose of declaring that I, the said W. S. Mosher, do hold the title to the said property under the said deed in trust for

the following stockholders of Mosher Manufacturing Company in proportion to their holdings in the capital stock of the said company, as follows:

| | |
|---|---|
| W. S. Mosher | 358 shares |
| Mrs. J. E. Mosher | 358 shares |
| M. E. Mosher | 358 shares |
| Grace M. Jones | 340 shares |
| Thomas J. Jones | 18 shares |
| Theodore J. Mosher | 358 shares |
| W. S. Mosher, Trustee | 115 shares |

And it is also declared that the said vendor's lien note has been executed on behalf of and as representative of the several interests hereinabove set out.

IN WITNESS WHEREOF, I have executed this declaration of trust this 3rd day of January, 1919.

(Signed)          W. S. MOSHER.

The undersigned stockholders of Mosher Manufacturing Company do hereby confirm the trust so declared in the foregoing declaration of trust on behalf of W. S. Mosher.

(Signed)          MRS. J. E. MOSHER.
(Signed)          M. E. MOSHER.
(Signed)     ·    GRACE M. JONES.
(Signed)          THOMAS J. JONES.
(Signed)          T. J. MOSHER.

Since January 3, 1919, the corporation has not actually paid any money to W. S. Mosher as rent for the said real estate, nor has W. S. Mosher paid any money to the corporation as interest on said note for $153,739, because one obligation exactly offsets the other. The corporation has continued to pay the taxes on said real estate.

On December 31, 1920, one R. H. Jones owed the petitioner on either an account or a promissory note, the amount of $9,569.74, of which the amount of $5,520 was secured by a lien on some tools. Jones had gone into bankruptcy some time prior to December 31, 1920. The petitioner was advised by its credit man that $4,049.74 of the account or note, representing the part of the debt not secured by the lien, was worthless and on January 15, 1921, that amount was charged off on the petitioner's books by a journal entry as of December 31, 1920.

On December 31, 1920, the Simplex Ice Machine Co. owed the petitioner $1,397, which was carried on its books as an account receivable. The Simplex Ice Machine Co. had gone into bankruptcy prior to December 31, 1920, and from information acquired through its credit man, it appeared to the petitioner that there was no prospect of anything being recovered on the account. It was, therefore, charged off as worthless by a journal entry written on January 15, 1921, effective as of December 31, 1920. On May 31, 1921, outside parties put up some money for the bankrupt and $739 was paid to the petitioner on the account.

The respondent, upon audit of the petitioner's income and profits-tax return for the year 1919, reduced invested capital by the amount of $129,322.91, representing appreciation in the value of the real estate hereinbefore mentioned, and upon audit of the petitioner's return for the year 1920 he disallowed as deductions from gross income the debts due the petitioner from R. H. Jones and the Simplex Ice Machine Co., which were charged off as above set forth.

OPINION.

MARQUETTE: The first question presented for determination by the record in this proceeding is whether the petitioner is entitled to include in invested capital for the year 1919, the amount of $129,322.91, representing the appreciation in the value of its real estate which was realized upon the sale thereof to W. S. Mosher under the circumstances set forth in the findings of fact. It is the contention of the petitioner that shortly prior to May 1, 1918, it made to W. S. Mosher, as trustee for the other members of the Mosher family, what may, for the lack of a better term, be called an equitable conveyance of the property; that although the formalities necessary to convey the legal title were not consummated until January 3, 1919, the conveyance in reality was made prior to May 1, 1918, so as to invest W. S. Mosher with all the essential ownership, and that the purchase price became a debt due the corporation at that date which should be considered in determining surplus and profits as of December 31, 1918, and invested capital for 1919.

Upon consideration of the record before us we are of the opinion that the contention of the petitioner can not be sustained. The minutes of the meeting of the directors of the corporation held on January 3, 1919, recite that prior to May 1, 1918, an option had been given to W. S. Mosher to purchase the real estate in question, and the same recital is included in the deed conveying the property. Without specifically attacking the minutes or the deed, the petitioner has attempted to show that the recitals therein are not accurate and do not reflect what actually took place. However, they have failed to convince us on that point. Placing on the testimony the interpretation most favorable to the petitioner, it establishes no more than that shortly prior to May 1, 1918, the stockholders of the corporation at an informal meeting orally agreed to sell the real estate to W. S. Mosher as trustee at its book value. Even if we were to hold, which we do not, that real estate can be conveyed in the manner claimed by the petitioner, the evidence falls far short of establishing that any such conveyance was made in this case. A contract to sell real estate is not a conveyance thereof; it is not self-executing and an oral contract could not even be enforced. The status of the real estate in-

volved herein, and of the several parties who were interested in the transaction with reference to it, was the same between the date of the agreement to sell and January 3, 1919, as it had been before the agreement was made. In our opinion there was no conveyance of the real estate until January 3, 1919, and the Commissioner, therefore, properly excluded the appreciated value of the real estate from the petitioner's invested capital for the year 1919.

The petitioner, however, urges that if we hold that no sale of the real estate took place in the year 1918, the appreciation in the value thereof should nevertheless be included in invested capital for 1919, because such appreciation had occurred prior to March 1, 1913, and was a part of surplus or undivided profits as of that date. This contention has been effectively answered, adversely to the petitioner, by the decision of the United States Supreme Court in the case of *LaBelle Iron Works* v. *United States*, 256 U. S. 377, and a further discussion of this point will serve no useful purpose.

With reference to the debts due to the petitioner from R. H. Jones and the Simplex Ice Machine Co., which it claims as a deduction from gross income for the year 1920, we are satisfied that the debts were worthless in 1920 and were proper deductions from gross income in that year.

*Judgment will be entered for the respondent on 15 days' notice, under Rule 50.*