STATE BANK OF ALCESTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5913.   Promulgated October 20, 1927.

On the evidence, *held* that notes were ascertained to be worthless and charged off within the year.

*Ralph H. Case, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes of $2,660.88 for the year 1920. The deficiency results from the disallowance by the respondent of a deduction of $6,781.19 taken by the petitioner as a loss sustained on notes determined to be worthless in 1920.

### FINDINGS OF FACT.

The petitioner is a South Dakota corporation with its principal office at Alcester. In 1919 G. N. Slocum contracted to purchase 240 acres of land in Lincoln County, S. Dak., at a price of $63,846.45. At the time of making the contract he made a payment of $1,000.45 and on March 1, 1920, he made an additional payment of $10,046 and assumed mortgages for the balance of the purchase price. The petitioner loaned Slocum $10,000 of the amount paid on the land and in connection therewith received from him his note for $4,000, dated May 27, 1920, and due January 1, 1921.

In addition to his equity in the 240 acres of land referred to above, Slocum owned an equity in 40 acres of land located in the Rio Grande Valley of Texas. During the summer of 1920 Slocum's equity in that land was destroyed as the result of a flood.

About April, 1920, land in the region surrounding Alcester and in which Slocum's 240 acres was located began to decline in value due to deflation. By the end of 1920 the value of Slocum's land had declined to about $40,000, which was less than the indebtedness represented by mortgages against the property. Both Slocum and the petitioner tried to sell the land, but neither could get any offers for it. Slocum had no other property than that mentioned above. He was employed by a farmers' cooperative association at a salary of $100 per month. At various times Slocum indicated a willingness to pay if he could get the money. Suit was not brought on the note, nor was it ever contemplated.

On December 24, 1920, Mrs. Annie Ofstad, a widow, gave the petitioner her unsecured note for $1,635.09 due on demand. This note represented a renewal of five other small notes of Mrs. Ofstad

held by the petitioner which grew out of transactions in 1919. In March, 1920, the petitioner acquired Mrs. Ofstad's secured note for $6,013. This note was secured by her small equity in 80 acres of land in Northern Minnesota and all her personal property which consisted of farm chattels. Some time in the early part of 1920 the president and cashier of petitioner bank checked Mrs. Ofstad's personal property and her equity in the land and ascertained that its value was decreasing and at that time was less than the amount of the note for which it was given as security. Since 1920, the farm chattels have been sold for $3,600 but the land was found not to have any value in excess of indebtedness against it. During the years 1919 and 1920, in which she was engaged in farming, Mrs. Ofstad was unable to make money.

At the close of 1920, the petitioner held an unsecured note of Mathias Anderson for $350 dated July 24, 1920, due October 1, 1920, and which represented a renewal of two notes given by Anderson on April 13 and 15, 1920. Anderson had 80 acres of land which was heavily encumbered and which he subsequently lost under foreclosure proceedings. At the time the loans were made, the officials of petitioner bank were of the opinion that Anderson had certain hogs which he would be able to sell in midsummer, but it later developed that the hogs were the property of his son. Anderson had no property out of which petitioner could make collection.

On May 26, 1920, the petitioner made a loan of $40 to Peter Walters, accepting his unsecured note. Walters was an old man, married, working as a farm laborer and had no property out of which to make collection. About 1924 or 1925 the bank turned over some of its " poor paper " to one Robinson who brought suit on the Walters note and obtained judgment, but never collected the note.

At the end of 1920, the petitioner held three unsecured notes given by Frank Knight. One for $100 was dated June 11, 1920, and due December 11, 1920; another for $25 dated October 19, 1920, and due in that year. The other note was for $280.29 dated October 23, 1920, and due on demand. Some of these notes constituted renewal notes given in connection with former transactions. In October, 1920, the petitioner attempted to obtain from Knight security for the notes. He refused, but promised to make payment in the early part of December out of money he expected to receive from the sale of his corn. In December he sold his corn but refused to meet his obligations, not only to the petitioner but to all other of his creditors. Suit was not brought on the notes since the officers of petitioner believed Knight had a large number of other creditors and that he was likely to go into bankruptcy. An additional reason for not bringing suit was that Knight had already disposed of most of his property.

On October 21, 1920, the petitioner made a loan of $350 to Carl Famestad on his unsecured note due December 1, 1920. Before the end of the year it was ascertained that all of Famestad's property was mortgaged to two other banks for a total amount which was twice its value. The banks subsequently took large losses on the property. Suit was not brought on the note as such means of collection was "cancelled by bankruptcy." However, about two years later, in connection with another loan, the bank obtained from Famestad a renewal of the note.

At the end of 1920 no suit had been brought on any of the notes. However, demand for payment had been made on all those past due. With the exception of the Knight and Famestad notes, none of the notes were ever collected, adjusted or realized upon.

The minutes of the meeting of the board of directors of the petitioner bank of January 11, 1921, contain the following:

All notes carried in the bank, including #10,085 to #10,809, inclusive, were examined and approved, by unanimous vote.

Included in the notes carried in the bank on January 11, 1921, were those previously described herein.

The action of the directors in passing the foregoing resolution was intended to be a formal compliance with the requirements of the State Banking Department that the directors give their approval to all the assets owned by the bank. It was not intended as an expression of their opinion that all the notes held by the bank were good, but was a formal confirmation of the action of the officers. The president of the bank had authority to ascertain the worthlessness of and charge off as a matter of bookkeeping such notes as he found were worthless in 1920. The following is a copy of the entries in petitioner's Day Book relative to the notes here involved:

MARCH 7, 1921.

NOTES CHARGED OFF AS DECEMBER 31, 1920

| Undivided profits | | Discounts | |
|---|---|---|---|
| Notes charged off | $6,781.19 | G. N. Slocum note | $4,200.00 |
| Reserve for Dep | 542.07 | Mrs. Annie Ofstad | 1,635.90 |
| | 7,323.26 | Mathias Anderson | 350.00 |
| | | Peter M. Walter | 40.00 |
| | | Frank Knight | 25.00 |
| | | Do | 280.29 |
| | | Do | 100.00 |
| Interest | | Carl Famestad | 350.00 |
| G. N. Slocum, Int. | | | 6,981.19 |
| $4,200 note, $4,000= | | | |
| $200 | 200.00 | Res. for Depreciation | 542.07 |
| | 7,523.26 | | 7,523.26 |

In an audit of the petitioner's income tax return for 1920 the respondent disallowed a deduction of $6,781.19 taken by the petitioner as representing a loss on the following notes:

| | | | |
|---|---|---|---|
| G. N. Slocum | $4,000.00 | Frank Knight | $25.00 |
| Mrs. Annie Ofstad | 1,635.90 | Do | 280.29 |
| Mathias Anderson | 350.00 | Do | 100.00 |
| Peter M. Walter | 40.00 | | |
| Carl Famestad | 350.00 | | 6,781.19 |

At the end of 1920, the petitioner properly ascertained the above notes to be worthless and charged them off.

### OPINION.

TRAMMELL: The petitioner contends that it is entitled to the deduction of $6,781.19 taken since it sustained during 1920 a loss of that amount on the notes. The respondent contends that the deduction is not allowable either as a loss sustained during the year or as debts ascertained to be worthless and charged off during the year.

While Slocum's note for $4,000 was not due until January 1, 1921, yet we find that at the end of 1920 it was ascertained that his liability on the 240 acres of land which constituted his only asset and for which there were no buyers, was greatly in excess of its value. His only income was his salary of $100 per month from a farmers cooperative association.

On December 24, 1920, the petitioner accepted Mrs. Ofstad's unsecured note for $1,635.90 as a renewal of five other small notes given in connection with transactions that had occurred in 1919. The testimony shows that Mrs. Ofstad's property in 1920 was insufficient to pay her secured note for $6,013 held by the petitioner, and that her success as a farmer was not such as to afford any hope for collection of the secured note, much less the one that was unsecured, which is the note involved here.

The evidence in the case consisted chiefly of the testimony of the president of the petitioner bank who was familiar with the financial condition of the persons who gave the notes. His testimony regarding the worthlessness of the notes in 1920 was supported by the president of another bank located in Alcester, who was also well acquainted with the financial condition of the parties. After carefully considering all the evidence in the case, we are of the opinion that the notes were ascertained to be worthless in 1920.

While it appears that the petitioner did not make the bookkeeping entries charging off the accounts until after the end of the year it did so as of December 31, 1920, before the books were closed. The petitioner treated the matter as a part of the year's transactions and determined its profits for the year on the basis of

the elimination of the accounts. In our opinion the petitioner is entitled to the deductions claimed on account of the said debts.

Reviewed by the Board.

> *Judgment will be entered after 15 days' notice, under Rule 50.*