**POTTASH BROS. v. BURNET, Commissioner of Internal Revenue.**

No. 5082.

Court of Appeals of District of Columbia.
Argued April 9, 1931.
Decided May 4, 1931.

Geo. E. H. Goodner, of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Morton K. Rothschild, C. M. Charest, and Shelby S. Faulkner, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a petition to review a decision of the Board of Tax Appeals.

Max Pottash and Harry Pottash were formerly partners trading as Pottash Bros. We shall call them appellant.

On March 27, 1918, appellant filed its 1917 return for income taxes, and in September, 1924, the partnership was dissolved, and was succeeded by a corporation known as Pottash Bros. Co. This corporation took over all of the assets of the partnership. On December 15, 1925, the Commissioner notified appellant of the additional tax imposed for the year 1917, and, as the five-year period had expired on March 27, 1923, we are met at the threshold by a plea of the bar of the statute of limitations. At the hearing before the Board, the Commissioner offered as his authority to make the deficiency assessment a written waiver of the statute dated December 3, 1924, and signed as follows: "Pottash Brothers, Taxpayer, By Max Pottash—Partner," and the Board, in its findings of fact, certifies as follows: "Pottash Brothers had filed a chain of waivers or consents extending the time within which deficiencies might be assessed and collected. It filed one such consent dated December 3, 1924 (the one referred to above), which extended the period within which to assess and collect any tax on the partnership." This waiver, if valid and binding against the partnership, carried the statute over, and the deficiency assessment was in time. Appellant now insists that in December, 1924, when the waiver was signed by Max Pottash, the tax was barred. The findings of the Board would indicate the contrary, and, if the question were material, we should have to look to the record to determine whether the Board's finding that there had been filed "a chain of waivers or consents extending the time" is supported by any substantial evidence. United States v. Copper

Queen Mining Co., 185 U. S. 495, 22 S. Ct. 761, 46 L. Ed. 1008; Kendrick Coal & Dock Co. v. Commissioner (C. C. A.) 29 F.(2d) 559, 563. But we do not regard the question as material since Stange v. U. S., 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335, in which it was held that a waiver of the limitation is effective, even though executed more than five years after the filing of the return. And so we come to consider the point only on the question whether, after the dissolution of a partnership, one partner can, by acknowledgment or waiver, revive a debt due by the partnership so as to take it out of the statute of limitations. During the continuance of the partnership, the act of a partner within the scope of the business binds all other partners, and this results from an implied mutual delegation of authority. Ordinarily when the partnership is dissolved, the authority of the individual partners is terminated. The dissolution revokes the power to create new contracts, and one of the partners may not by his sole act, after a debt is barred by the statute, revive it against the other partners, and so it was held in Schoneman v. Fegley, 7 Pa. 433: "After dissolution, the late partners are not agents for each other, except to make good outstanding engagements, or for the purpose of liquidating the affairs of the partnership. They cannot enter into a new contract or engagement for their former associates, nor bind them by a new promise." As the waiver in question was executed in Pennsylvania, and was to be performed in Pennsylvania, we assume the decisions of the highest court of that state should be followed, and the rule stated is that which has been consistently adhered to by the Supreme Court of Pennsylvania, and this is also the rule in the federal courts. Bell v. Morrison, 1 Pet. 351, 7 L. Ed. 174. But there is another aspect to the question which we think takes it out of the rule, for it is elemental that the members of the partnership even after dissolution continue liable to those with whom they have previously dealt as partners, who have no notice or knowledge of the dissolution, 20 R. C. L. page 964, and the effect of the failure to give such notice in the case of one who has had prior dealings with the firm is to continue the former mutual agency of the partners in spite of the fact of dissolution, Spears v. Toland & Son, 1 A. K. Marsh. (Ky.) 203, 10 Am. Dec. 722. And so the principle is now well established that, where a partnership is voluntarily dissolved and fails to give general notice of the fact, the power of the individual partners to bind all

of the partners, as to third persons who have no knowledge of the dissolution, remains in full force, and this is particularly the case with those persons who have dealt with the firm before, for in such case it is universally held that actual notice of the dissolution should be shown, or circumstances from which actual notice may be inferred. In the case under consideration, a careful examination of the record shows that the Commissioner was given no notice of the dissolution of the partnership prior to the signing of the consent or waiver of December 3, 1924, nor does the record show that there was such notice at any time prior to the hearing before the Board on January 21, 1928. On the contrary, in its petition filed in 1926 with the Board of Tax Appeals, the partnership is considered as still existing, and the affidavit to the petition made by one of the partners sets out that he is a member of the partnership and is authorized to verify the petition. The Commissioner, on the other hand, treated the partnership as still in existence, as he had a right to do, and the statement in the affidavit of Max Pottash that he was duly authorized to verify the petition on behalf of the partnership is nowhere in the record denied by the other partner, Harry Pottash, and, as he too was a party individually to all the proceedings, it is obvious that the question now raised is purely an afterthought and is without substance, and therefore should be denied.

This brings us to consider the other questions raised. These are three. The first relates to the rejection by the Board of an item of $3,326 claimed by appellant as a part of its invested capital as of January 1, 1917. If the amount excluded had been included in appellant's net worth as of the date mentioned, its taxable income for 1917, under the accounting method adopted, would have been that much less. The sum of $3,326 represented an investment in building and loan stock as of January 1, 1917, and the only question involved is whether the stock belonged to the partnership or to individual members of the families of the two partners. The Board held it was not an asset of the partnership, and based its conclusion in this respect upon the testimony of a revenue agent, to the effect that the books of the building and loan association were in the names of wives or relatives of the partners. We have had recourse to the evidence to determine precisely what it shows in this respect, and, fairly stated, that on behalf of the Commissioner goes no farther than the

fact that the building association books were in the names of some of the sons and daughters of the two partners, while, on the other hand, appellant showed quite clearly that all amounts paid into the building association were from the funds of the partnership, and that, as the stock matured, the proceeds went into the partnership business. It likewise showed that the stocks were carried on the books of the partnership as firm assets, and the Board itself appears to have recognized this fact—though it did not give it effect—by itself including all amounts paid into the building association during the year 1917 as an asset of the partnership as of the end of that year. While it is true that, in reviewing decisions of the Board, we consider only questions of law and not of fact, we are nevertheless required to ascertain if a particular finding of fact is supported by substantial evidence. In the matter now under consideration, we think there is an absence of evidence upon which to base a conclusion that the building association stock was not a partnership asset. The mere fact that the stock was in the name of a particular person is at best only prima facie evidence of the fact of ownership and always yields to evidence of the real fact of ownership. Here the undisputed evidence is that the stock was regularly carried on the partnership books as an asset, and that the proceeds from the stock as it matured were paid into and the payments for the stock until maturity were paid out of the partnership earnings, and this makes such a case as we think impels our holding that the Board erred in refusing to give effect to the item in ascertaining the net worth of appellant as of January 1, 1917.

The second point is that the Board erred in refusing to allow appellant $2,060.42 claimed to have been charged off on account of bad debts and losses during the taxable year. The Board's finding is that these accounts were not entered in the new ledger opened in January, 1918, but it also found that they were not ruled off the 1917 ledger, though they were eliminated in the balance sheet as of December 31, 1917. The Revenue Act of 1917 (section 206 [40 Stat. 305]) allows deductions in the case of a partnership for debts actually ascertained to be worthless and charged off during the year. There is nothing in the findings of fact nor is there any evidence in the record from which we are able to say that the action of the Commissioner in this respect was wrong. Appellant has introduced no evidence to show that the debts were worthless, nor anything to show an ef-

fort on its part to determine this question. If appellant's position is correct, then any taxpayer, by dropping debts due him from a balance sheet or from his books, could evade the payment of all taxes, and of course this is not the law. We think there was an obligation on the taxpayer to show by satisfactory evidence that the debts were not collectible, and, in the absence of evidence to that effect, and since, particularly, the question is one primarily for the determination of the Commissioner, we affirm the finding of the Board.

This leaves for consideration the action of the Board in increasing appellant's income $34,323.22 on account of purchases made in 1917. The controversy as to this item grows out of these facts: Appellant during 1917, as in previous years, had purchased secondhand burlaps and bags from peddlers and junk dealers. At the time of delivery, it was not always possible to determine the exact amount payable to the seller, and so a cash advance was made estimated at approximately 80 per cent. of the purchase value. The bags were then remanufactured, and went into stock. The amount of money so advanced in 1917 was $39,495.20, for which no purchase entry had been made. Appellant's auditor discovered this mistake, and corrected it with an entry as of the end of the year, debiting merchandise and crediting the various accounts by the amounts of the advances. Admittedly, if this entry had not been made, the books would have reflected thirty-nine thousand odd dollars more income for 1917 than was correct. As to this, the Board says: "There can be no question but that the action of the accountant employed by the partnership was correct for the purpose of determining the true net worth of the partnership at December 31, 1917. He corrected, however, a practice which had been in existence apparently throughout 1916 and 1917. The same conditions existed in 1916 as in 1917. He did not correct the books at January 1, 1917. To the extent that there may have been unbalanced debits in the accounts payable ledger at January 1, 1917, an overstatement of the net worth of the partnership at the beginning of the year 1917 would have resulted, for the merchandise that had been received up to January 1, 1917 was either reflected in sales of merchandise in 1916 or in inventory at the close of the year. We cannot determine the extent of any error that may have been made at the beginning of 1917. It is evident, however, that the net worth at the close of 1917 was determined on

an entirely different basis from that at the beginning of the year and we cannot accept the accountant's statement as reflecting the true net worth at the beginning of the year."

Obviously, we think, this criticism of the entry as of the end of the year 1917 is well founded. The mistake corrected at that time grew out of a practice extending through the previous year, so that the same character of mistake which the correction as of the end of the year sought to rectify existed as of the beginning of the year. The amount may have been larger, or it may have been smaller, and in the one case it would have increased the net worth—in the other it would have reduced it—and proof of the real fact, in view of the Commissioner's finding, was peculiarly within the knowledge of appellant. In the absence of such proof, the Board was clearly right in disallowing the deduction of the item from the net income of the taxpayer for 1917.

The decision of the Board of Tax Appeals is therefore modified, and, as modified, is affirmed and remanded for further proceedings not inconsistent with this opinion.

Modified and affirmed.