MALDEN TRUST CO. v. COMMISSIONER
OF INTERNAL REVENUE.
No. 3480.

Circuit Court of Appeals, First Circuit.
March 29, 1940.

Charles M. Rogerson, of Boston, Mass. (Howard C. Connor and Roger W. Hardy, both of Boston, Mass., on the brief), for petitioners for review.

Ugo Carusi, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before WILSON and MAGRUDER, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge.

This is a petition to review a decision of the Board of Tax Appeals (39 B.T.A. 190) upholding the Commissioner's determination of a deficiency of $6,460.71 in the petitioner's income tax liability for the year 1933. The taxpayer claims to be entitled to (1) a bad debt deduction on certain promissory notes in the amount of $53,517.75; and (2) a loss deduction, arising from the foreclosure sales of certain properties at prices less than the indebtedness, of "the difference between the amount of the indebtedness and the bid price."

(1) The Board's findings of fact were that in September, 1932, the petitioner's accounts were examined by an examiner for the Massachusetts Commissioner of Banks; that when this examination was ended, the bank's officials knew the substance of his report; that on December

22, 1932, the executive committee of the bank recommended to the directors that the face value of 110 notes, aggregating over $100,000, be charged to the Profit and Loss Account; that on December 29, 1932, the Commissioner of Banks made his report which was officially communicated to the taxpayer on December 30, 1932; that the report listed the same notes as those listed in the vote of the executive committee; that on December 31, 1932, the petitioner charged off bad debts aggregating $50,-422.55, consisting of some of the above listed items; that on January 20, 1933, the remaining items on the list, aggregating $53,515.75, were charged off; that these items had been ascertained by the petitioner to be worthless in 1932; and that this amount of $53,515.75 was sought to be deducted from the petitioner's gross income in computing its 1933 tax liability.

The opinion states further:

"Both the bank examiner and the executive committee of the petitioner were clearly of the opinion in 1932 that the debts aggregating $103,938.30 should be charged off. Instead, however, the charge-off at that time was limited to $50,422.55. Why it was thus limited does not clearly appear, although the suggestion is made—and not unreasonably—that this was the extent to which a tax deduction would be useful in 1932. When the later charge-off was made on January 20, 1933, nothing more had happened to demonstrate worthlessness beyond what was known at the end of 1932."

A taxpayer is entitled to a bad debt deduction only if the debt is both ascertained to be worthless and charged off within the same taxable year. American Cigar Co. v. Commissioner, 2 Cir., 1933, 66 F.2d 425, 427, certiorari denied, 1933, 290 U.S. 699, 54 S.Ct. 208, 78 L.Ed. 601; Motter v. Wallace, 10 Cir., 1934, 72 F.2d 678, 680; Avery v. Commissioner, 5 Cir., 1927, 22 F.2d 6, 7, 55 A.L.R. 1277; see 3 Paul & Mertens, Law of Federal Income Taxation (1934) sec. 28.25. And the fact that debts are charged off in one year raises no presumption that they were also ascertained to be worthless in that year. The burden is still on the taxpayer to prove the latter fact, and if he fails to sustain this burden, the Commissioner's disallowance will be approved. Pottash Bros. v. Burnet, 1931, 60 App.D.C. 167, 50 F.2d 317, 320; Pioneer Fruit Co. v. Commissioner, 21 B.T.A. 833; Rowell v. Commissioner, 12 B.T.A. 1197.

It is conceded that the items involved here were charged off on January 20, 1933. The Board found, however, that the taxpayer was not entitled to a deduction in 1933, the only taxable year presently in issue, because the debts had been ascertained to be worthless in 1932. This is a finding of fact and the only question before us is whether there was substantial evidence to support this finding. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Powell v. Commissioner, 1 Cir., 1938, 94 F.2d 483, 485; Slayton v. Commissioner, 1 Cir., 1935, 76 F.2d 497, certiorari denied, 296 U.S. 586, 56 S.Ct. 131, 80 L.Ed. 415.

We hold that the undisputed acts which occurred in 1932, viz., the examination of the petitioner's accounts by the state bank examiner, his communication of the substance of his report to the bank's officers, the recommendation of the petitioner's executive committee that notes, including those involved here, should be charged off as worthless, the formal communication on December 30, 1932, of the Bank Commissioner's report to the bank, and the petitioner's action on December 31, 1932, in charging off as worthless the $50,-422.55 bad debts which, so far as the record reveals, were just as collectible or uncollectible as the $53,515.75 debts with which we are now concerned, were sufficient to justify the inference drawn by the Board that the responsible officials of the bank, presumably reasonable men neither overly optimistic nor unduly pessimistic, had in 1932 ascertained these notes to be worthless.

It is urged that because these events occurred very late in 1932, the Board's denial to the taxpayer of a deduction in 1933, a conclusion in which we now concur, is harsh and unjust. But our only holding is that because the debts were in fact ascertained to be worthless in 1932, they could not be made the basis of a bad debt deduction in 1933. The question whether, on the facts as found by the Board, the taxpayer was entitled to a deduction in 1932 is not now before us. It may not be amiss to note, however, the frequent holdings of the Board that where debts ascertained to be worthless in one year are charged off shortly after the close of that year before the books are closed, they may be deducted as of the year of ascertainment. Appeal of Mason Machine Works Co., 3 B.T.A. 745,

750; Mosher Mfg. Co. v. Commissioner, 7 B.T.A. 187, 194, 196; State Bank of Alcester v. Commissioner, 8 B.T.A. 878, 881; Imperial Furniture Co. v. Commissioner, 9 B.T.A. 713, 718, 719; Rockwell Mfg. Co. v. Commissioner, 19 B.T.A. 277, 279.

■ (2) It was stipulated by the parties, and the Board found to be facts, that in 1933 the bank foreclosed mortgages on various parcels of real estate by itself buying in the properties at foreclosure sales. The amounts of the mortgage debts, the bid prices, and the claimed losses were stipulated—in each case, the claimed loss was the difference between the mortgage indebtedness and the bid price. In its petition for review, the petitioner asserts that the Board "erred in refusing to rule that the foreclosure by sale of mortgages in 1933 resulted in a deductible loss for the difference between the face of the mortgages and expenses of foreclosure, and the bid price at the sale and in ruling that a mortgagee cannot sustain a deductible loss on purchasing real estate at a foreclosure sale."

The Board ruled that the only deduction, if any, to which the petitioner might be entitled was for bad debts, and that the taxpayer's transfer on its books of the mortgage debts from one asset account called "loans on real estate" to another asset account called "foreclosed real estate" was not a statutory charge-off. We agree with the Board that the taxpayer must eliminate the debt as an asset on its books in order to comply with the statutory requirements of charge-off. American Cigar Co. v. Commissioner, 2 Cir., 1933, 66 F.2d 425, 427, certiorari denied, 1933, 290 U.S. 699, 54 S. Ct. 208, 78 L.Ed. 601.

■ The question of whether the taxpayer realized a deductible *loss* as a result of its buying in the property at the foreclosure sale has been discussed in Hadley Falls Trust Co. v. United States, No. 3434, decided this day. In that case we held that Article 193 of Regulations 74, promulgated under the Revenue Act of 1928, was valid and applicable to the facts presented there. For similar reasons we now hold that Article 193 of Regulations 77, promulgated under the Revenue Act of 1932, is valid and applicable to the facts presented here.

■■ However, the taxpayer, in claiming to be entitled under Article 193 to a *loss* deduction equal to the difference between the mortgage indebtedness and the bid price, is misinterpreting the effect of that provision. The Regulation breaks the foreclosure sale transaction down into two parts: (a) the mortgagee is entitled to a *bad debt* deduction equal to the unsatisfied, uncollectible difference between the mortgage indebtedness and the bid price, provided such sum is ascertained to be worthless and charged off during the taxable year; (b) in addition, the mortgagee realizes loss or gain measured by the difference between the amount of the mortgage obligations which had been applied to the bid price and the fair market value of the property.

The taxpayer conceivably might be entitled to a deduction based on the difference between the basis of the obligations applied to the bid price and the fair value of the property. But, so far as appears in the record, the taxpayer has at no point in the course of the entire proceedings, either before the Commissioner, the Board, or this court, asserted that the fair value of the property was different from the bid price. Indeed, in its brief the taxpayer assumes that the value of the property was the bid price. As we pointed out, its claimed "loss," in each instance, is the difference between the mortgage debt and the bid price.

Our function, in considering petitions for review of decisions of the Board of Tax Appeals, is limited to passing upon questions of law decided by the Board. Since the Board did not err in holding that the taxpayer was not entitled to a *loss* deduction measured by the difference between the mortgage indebtedness and the bid price, and since we are convinced from an examination of the record that remanding the case to the Board for further proceedings would be futile, the decision must be affirmed.

The decision of the Board of Tax Appeals is affirmed.