COMMUNITY BANK, A CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2617–72.    Filed July 9, 1974.

*Thomas G. Bost* and *M. Rogue Hemley*, for the petitioner.
*Sheldon M. Sisson*, for the respondent.

WILES, *Judge:* Respondent determined deficiencies in petitioner's income tax for taxable years ending December 31, 1966, and December 31, 1967, in the amounts of $234,007.61 and $527,640.00, respectively. The parties have settled several issues. The remaining issue for decision is whether petitioner realized a gain upon acquisition of real property through foreclosure proceedings. If it is determined that

petitioner had realized a gain, a second issue is whether the gain is treated as an ordinary or capital gain. If it is determined that petitioner realized no gain, respondent alternatively contends that petitioner is entitled to a bad debt deduction measured by the difference between the unpaid loan balances and the fair market value (rather than bid price) of the real property at the time of acquisition.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Community Bank (hereinafter referred to as petitioner) is a commercial banking institution organized and licensed under the banking laws of the State of California. Petitioner's principal place of business was Huntington Park, Calif., at the time the petition was filed. It filed Federal income tax returns for 1966 and 1967 with the district director of internal revenue in Los Angeles, Calif.

A normal part of petitioner's business is the receiving of deposits and the making of secured and unsecured loans. A substantial portion of petitioner's income is derived from holding the notes representing such loans and collecting interest and other charges from the debtors. Petitioner, which initiates several thousand loans each year, initiated more than 10,000 loans in each of 1966 and 1967. Of such loans, 33 loans made in each of 1966 and 1967 were designated by petitioner as "real estate loans." With respect to these loans, the obligation of the borrower was secured by a first deed of trust and the petitioner obtained an appraisal of and title insurance covering petitioner's security interest in the subject real property. The real estate loans generally were not made to enable the borrowers to acquire the real property securing such loans. Such parcels of real property generally were owned by the borrowers at the time of the making of the loans and many of such loans were made to finance the construction or other making of improvements on the subject real property.

Commencing in December 1965, when the prime interest rate increased a full point, a period of high interest rates and lack of available credit for borrowing secured by real estate was experienced. This period of tight credit extended through 1966 and 1967, the taxable years in issue. As a result of this tight credit situation, some of petitioner's borrowers became overextended and defaulted on their loan obligations to petitioner. During 1966 and 1967 petitioner acquired, through foreclosure proceedings, 19 parcels of real property. All foreclosure and sale proceedings were conducted in accordance with the provisions of the California Civil Code and Code of Civil Procedure, the requirements of which include the giving of notice of default to the borrower, giving of public notice of the trustee's sale, and sale of the subject property at public auction to the highest bidder.

Among the properties acquired by foreclosure proceedings during 1966 and 1967 were the six parcels listed below:

| Property | Acquired | Balance due under notes and costs of foreclosure | Prior liens | Bid price | Fair market value determined by petitioner |
|---|---|---|---|---|---|
| Oakhurst | Oct. 18, 1967 | $303,443.60 | 0 | $300,000 | $300,000.00 |
| Parish-Zetlin | Oct. 19, 1966 | 119,936.55 | 0 | 15,000 | 15,000.00 |
| Neiman | Oct. 4, 1966 | 235,016.84 | $153,016.50 | 15,000 | 168,016.50 |
| Shirley | Sept. 21, 1966 | 20,880.11 | 14,467.65 | 1,000 | 15,467.65 |
| Republic | Sept. 8, 1966 | 97,404.86 | 0 | 30,000 | 30,000.00 |
| Clark | Apr. 7, 1967 | 84,786.08 | 0 | 10,000 | 10,000.00 |

In each instance, petitioner determined the fair market value of the property to be its bid price plus prior liens on the property, in accordance with its understanding of the provisions of section 1.166–6(b)(2), Income Tax Regs., in the amounts set forth above. In no instance was the property acquired for more than the amount of the note outstanding to petitioner, and in all but one instance petitioner acquired the property for considerably less than the unpaid portion of the note which the property secured. Petitioner, as authorized by section 1.166–6(a), Income Tax Regs., charged against its bad debt reserve an amount equal to the difference between (1) the balance due under the note plus costs of foreclosure and (2) the bid price of the property acquired. With respect to each of the notes, the portion of the indebtedness remaining unsatisfied after the foreclosure sale was wholly uncollectible and wholly worthless in the year of the foreclosure sale.

OPINION

The primary issue is whether petitioner realized gain upon the foreclosure of the six pieces of real property listed above. If it is determined that petitioner realized gain, a second issue is whether such amounts represent ordinary or capital gain. If it is determined that petitioner realized no gain, respondent alternatively contends that petitioner is entitled to a bad debt deduction in the amount of the difference between the unpaid balance of the loans and the fair market value (rather than bid price) of the properties at the time of foreclosure.

Both parties rely on the provisions of section 1.166–6, Income Tax Regs., as support for their positions. The pertinent provisions of section 1.166–6, Income Tax Regs., are set out below:

(a) *Deficiency deductible as bad debt*—(1) *Principal amount.* If mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the portion of the indebtedness remaining unsatisfied after the sale is wholly or partially uncollectible, the mortgagee or pledgee may deduct such amount under section 166(a) (to the extent that it

constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it becomes wholly worthless or is charged off as partially worthless. See § 1.166–3.

\* \* \* \* \* \* \*

(b) *Realization of gain or loss*—(1) *Determination of amount.* If, in the case of a sale described in paragraph (a) of this section, the creditor buys in the mortgaged or pledged property, loss or gain is also realized, measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by the creditor) and the fair market value of the property.

(2) *Fair market value defined.* The fair market value of the property for this purpose shall, in the absence of clear and convincing proof to the contrary, be presumed to be the amount for which it is bid in by the taxpayer.

The regulations have the effect of breaking the foreclosure sale transaction into two parts: (1) The mortgagee is entitled to a bad debt deduction equal to the unsatisfied, uncollectible difference between the unpaid balance and the bid price and (2) the mortgagee realizes gain or loss measured by the difference between the amount of the mortgage obligation applied to the bid price and the fair market value of the property. See *Malden Trust Co.* v. *Commissioner*, 110 F. 2d 751 (C.A. 1, 1940).

In this case, petitioner extended loans to customers which were secured by real property. Upon default of the customers on the loans, petitioner commenced foreclosure proceedings and acquired the real property in question by submitting the highest bid price at public auction pursuant to California law. Since the properties were acquired for less than the amount owed on the loans, petitioner deducted the difference between the balance due under the notes plus costs of foreclosure and the bid price of the property acquired as a bad debt pursuant to section 1.166–6(a), Income Tax Regs. The primary problem in this case arises with the determination of the second part of the transaction—realization of gain or loss upon acquisition at the foreclosure sale. Petitioner contends that the bid prices entered by it in the foreclosure sales are presumptively equal to their fair market value and therefore it has no gain or loss upon such acquisition. Respondent contends that the fair market value of each parcel of real property is greater than the bid price entered by petitioner and, therefore, there is a realization of gain at that time. If the Court finds that fair market value is in excess of the bid price, the parties have stipulated as to the values to be assigned to the properties. For the reasons stated below, we hold for petitioner.

This case involves the interaction of several basic tax premises. First, the Income Tax Regulations and interpretations long continued without substantial change which apply to unamended or substantially reenacted statutes are deemed to have received congressional approval

and the effect of law. *Helvering* v. *Winmill*, 305 U.S. 79 (1938); *Weyerhaeuser Co.* v. *United States*, 402 F. 2d 620 (C.A. 9, 1968); *Harold Gilberg*, 55 T.C. 611 (1971). The provisions of section 1.166–6, Income Tax Regs., the interpretation of which is in question, have been in the regulations pertaining to bad debts since 1926. See art. 153, Regs. 69, Revenue Act of 1926.[1] Therefore, the provisions of section 1.166–6, Income Tax Regs., have the effect of law. Second, the taxpayer has the burden of proof. *Welch* v. *Helvering*, 290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure. Absent any provisions of the regulations, petitioner would be required to prove the fair market value of the property which it acquired in the foreclosure sales. The regulations provide, however, that for purposes of determining gain or loss upon acquisition of property by a creditor through foreclosure proceedings, fair market value is presumed to be equal to the bid price "absent clear and convincing proof to the contrary." Upon proof of the bid price, petitioner brings itself within the presumption of section 1.166–6, Income Tax Regs., and meets its burden of proof regarding the fair market value of the properties in question. Cf. *Brown* v. *United States*, 95 F. 2d 487 (C.A. 3, 1938).

Respondent contends that the presumption of section 1.166–6, Income Tax Regs., does not apply when the value of the property acquired by foreclosure is greater than the bid price. In such a situation, respondent argues that the regulations require the petitioner to use the "real value" of the property in computing gain or loss. We cannot accept respondent's contentions. The provisions of section 1.166–6, Income Tax Regs., do not limit the application of the presumption to cases wherein the alleged fair market value is lower than the bid price. The Commissioner cannot disregard the presumption established in the regulations without producing evidence to indicate that the bid price is not representative of the fair market value. In this case, respondent fails to explain how the so-called "real value" of the property is to be determined, and he produced no evidence to indicate that the presump-

---

[1] Art. 153. Uncollectible deficiency upon sale of mortgaged or pledged property.—Where mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the mortgagee or pledgee ascertains that the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible, and charges it off, he may deduct such amount (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off. In addition, where the creditor buys in the mortgaged or pledged property, loss or gain is realized measured by the difference between the amount of the face value of those obligations of the debtor which are applied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by him) and the fair market value of the property. The fair market value of the property shall be presumed to be the amount for which it is bid in by the taxpayer in the absence of clear and convincing proof to the contrary. If the creditor subsequently sells the property so acquired, the basis for determining gain or loss is the fair market value of the property at the date of acquisition.

tion does not apply. Under these circumstances, the petitioner does not have the burden of proving that bid price equals fair market value.

Respondent made several arguments in his defense of his position which we believe merit discussion. First, respondent argues that section 1.166–6, Income Tax Regs., permits an inquiry into the "true" fair market value of the foreclosed property. We agree. See *Hadley Falls Trust Co.* v. *United States*, 110 F. 2d 887 (C.A. 1, 1940) ; *T. Eugene Piper*, 45 B.T.A. 280 (1941). Such an inquiry will, however, rebut the presumption only upon the presentation of clear and convincing evidence to the contrary that the bid price does not equal fair market value as required by section 1.166–6(b) (2), Income Tax Regs. The usual situation is that the Commissioner applies the presumption in his favor and the taxpayer, by clear and convincing evidence, must rebut it. See *Securities Mortgage Co.*, 58 T.C. 667 (1972). When, as in this case, the presumption is applied by the taxpayer, the respondent cannot rebut it by merely declaring that the fair market value is higher than the bid price made by petitioner.

Second, respondent argues that petitioner will be able to arbitrarily choose the amount of gain or loss which it wishes to report by submitting low bids at foreclosure proceedings. If this is true, it is a result of the presumption established by respondent's own regulations which we assume, and the majority of cases in this area indicate, were adopted to create a presumption normally favoring the Commissioner. Moreover, respondent is not a bystander who must docilely accept the bid price as being the equivalent of fair market value for property acquired in foreclosure proceedings. He can, pursuant to the standard established in his own regulations, present clear and convincing proof to rebut the presumption. See *Clifford J. Heath*, T.C. Memo. 1971–129, wherein fair market value was determined to be greater than bid price upon presentation of clear and convincing proof by the Commissioner.[2] When, as in this case, respondent offers no proof to the contrary the bid price is presumed to be equal to fair market value.[3]

Third, respondent argues that the parties have agreed on the "true" fair market values of the real property acquired at the foreclosure sales. The agreement of the parties as to fair market value is clear and convincing evidence that the bid price is not equal to the fair market value. *Brown* v. *United States*, 95 F. 2d 487 (C.A. 3, 1938) ; *Commissioner* v. *West Production Co.*, 121 F. 2d 9 (C.A. 5, 1941), affirming on this point 41 B.T.A. 1043 (1940), certiorari denied 314

---

[2] See also Rev. Rul. 72–238, 1972–1 C.B. 65, wherein fair market value was stated to be in excess of bid price "as determined by qualified appraisers."

[3] Petitioner made several arguments regarding the sufficiency of proof necessary to defeat the presumption that bid price equals fair market value. Since respondent offered no proof to rebut the presumption, we make no findings concerning petitioner's arguments on this question.

U.S. 682 (1941). In the stipulation of facts, the parties agreed on values to be placed on the foreclosed real property if this Court found against petitioner on the presumption issue. Petitioner did not concede that the fair market value was other than bid price. The fact that the parties have agreed to values which should be deemed to be the fair market value of the property in question as an alternative does not represent clear and convincing proof to rebut the presumption of section 1.166–6(b)(2), Income Tax Regs.

Respondent alternatively argues that petitioner's deduction for bad debts should reflect an amount equal to the difference between the balance due under the notes plus costs of foreclosure and the fair market value (rather than bid price) of the property acquired. Section 1.166–6, Income Tax Regs., has been interpreted as allowing a bad debt deduction equal to the unsatisfied, uncollectible difference between the unpaid balance and the bid price. *Malden Trust Co.* v. *Commissioner*, 110 F. 2d 751 (C.A. 1, 1940). In this case, the parties stipulated that, with respect to each note, the portion of the indebtedness remaining unsatisfied after the foreclosure sale was wholly uncollectible and wholly worthless in the year of the foreclosure sale. That amount represents the difference between the amount owed plus foreclosure expenses and the bid price. Under section 1.166–6(a), Income Tax Regs., petitioner is entitled to a deduction for that amount. Furthermore, respondent's position in this case is inconsistent with his own published position in this area. See Rev. Rul. 72–238, 1972–1 C.B. 65. We hold for petitioner on this issue.

Since we have determined that petitioner realized no gain upon the foreclosure proceedings, we do not reach the issue of whether such an amount would be treated as ordinary or capital gain.

*Decision will be entered under Rule 155.*