T. Eugene Piper and Lily B. Piper (Also Known as Lilly B. Piper), Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 101766.   Promulgated October 7, 1941.

*Ferris D. Stone, Esq.,* and *Emmett E. Eagan, Esq.,* for the petitioners.

*Homer J. Fisher, Esq.,* for the respondent.

OPINION.

SMITH: Petitioners' contentions are that their entire gain or loss on the foreclosure transaction described above is to be determined in accordance with section 44 (d) of the Revenue Act of 1936[1] and article 44-3 of Regulations 94, as amended by T. D. 4832, 1938-2

---

[1] [SEC. 44.] (d) GAIN OR LOSS UPON DISPOSITION OF INSTALLMENT OBLIGATIONS.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. * * *

Cumulative Bulletin 155.[2] They contend that the doctrine of *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216, has no application to this proceeding. The Supreme Court held in that case that where a life insurance company as mortgagee bid in at a foreclosure sale property upon which it had loaned money at a price equal to the amount of the accrued interest plus the principal due under the mortgage, it realized interest income to the extent of the interest due. To the same effect are *Reserve Loan Life Insurance Co.*, 18 B. T. A. 359; *Missouri State Life Insurance Co.*, 29 B. T. A. 401; *Prudential Insurance Co. of America*, 33 B. T. A. 332; *Great Southern Life Insurance Co.* v. *Commissioner*, 89 Fed. (2d) 54. The Board had previously applied that rule to taxpayers other than life insurance companies. *Manomet Cranberry Co.*, 1 B. T. A. 706; *Ewen MacLennan*, 20 B. T. A. 900.

Petitioners' argument is that the doctrine of *Helvering* v. *Midland Mutual Life Insurance Co.*, *supra*, should be limited to life insurance companies, whose tax liabilities are computed under special provisions of the act and to which section 44 (d), *supra*, does not apply. Petitioners contend, in other words, that their entire gain or loss from the foreclosure transaction is to be determined under section 44 (d) of the Revenue Act of 1936 and under the rule of *Boca Ratone Co.* v. *Commissioner* (C. C. A., 3d Cir.), 86 Fed. (2d) 9, without

---

[2] Art. 44–3. *  *  *

\*        \*        \*        \*        \*        \*        \*

If the purchaser defaults in any of his payments, and the vendor returning income on the installment basis reacquires the property sold, whether title thereto had been retained by the vendor or transferred to the purchaser, gain or loss for the year in which the reacquisition occurs is to be computed upon any installment obligations of the purchaser which are satisfied or discharged upon the reacquisition or are applied by the vendor to the purchase or bid price of the property. Such gain or loss is to be measured by the difference between the fair market value of the property reacquired (including the fair market value of any fixed improvements placed on the property by the purchaser) and the basis in the hands of the vendor of the obligations of the purchaser which are so satisfied, discharged, or applied, with proper adjustment for any other amounts realized or costs incurred in connection with the reacquisition. (See also article 44–5.) The basis in the hands of the vendor of the obligations of the purchaser satisfied, discharged, or applied upon the reacquisition of the property will be the excess of the face value of such obligations over an amount equal to the income which would be returnable were the obligations paid in full. No deduction for a bad debt shall in any case be taken on account of any portion of the obligations of the purchaser which are treated by the vendor as not having been satisfied, discharged, or applied upon the reacquisition of the property, unless it is clearly shown that after the property was reacquired the purchaser remained liable for such portion; and in no event shall the amount of the deduction exceed the basis in the hands of the vendor of the portion of the obligations with respect to which the purchaser remained liable after the reacquisition. (See article 23 (k)–1.) If the property reacquired is bid in by the vendor at a foreclosure sale, the fair market value of the property shall be presumed to be the purchase or bid price thereof in the absence of clear and convincing proof to the contrary. If the property reacquired is subsequently sold, the basis for determining gain or loss is the fair market value of the property at the date of reacquisition (including the fair market value of any fixed improvements placed on the property by the purchaser).

\*        \*        \*        \*        \*        \*        \*

any separate determination as to interest income. The court held in the *Boca Ratone* case that, where the taxpayer as mortgagee repossessed property which it had previously sold on the installment basis and discharged the vendee from the installment obligation, and the fair market value of the property was then less than the unpaid balance of the contract price, as well as taxpayer's cost, the transaction resulted in a satisfaction of the installment obligation at other than its face value and that a deductible loss was sustained under section 44 (d). The *Boca Ratone Co.* case was followed in *Eggerman Investment Co.*, 36 B. T. A. 1196; *Walter F. Haass*, 37 B. T. A. 948; *Walker* v. *Thomas*, 119 Fed. (2d) 58; and *Edward Barron Estate Co.* v. *United States*, 38 Fed. Supp. 1017.

In *Hadley Falls Trust Co.* v. *United States* (C. C. A., 1st Cir.), 110 Fed. (2d) 887, the court distinguished the *Midland Mutual Life Insurance Co.* case, *supra*, holding that the taxpayer was entitled under section 23 (f) and (j) of the Revenue Act of 1928 and the Commissioner's regulations promulgated pursuant thereto, article 193 of Regulations 74, to a loss deduction equal to the difference between the portion of the mortgage obligations applied to the purchase price and the fair market value thereof at the time of the sale. Referring to the *Midland Mutual Life Insurance Co.* case, the court said:

> We do not find in *Helvering* v. *Midland Mutual Life Ins. Co.*, *supra*, anything requiring a different conclusion. The only question before the court in that case was whether an insurance company should include in its gross income, as interest, the amount of interest included in the bid price for real estate acquired by it at foreclosure sale, the fair market value being less than the bid price. The court held that the interest was taxable income.
>
> \*   \*   .\*   \*   \*   \*   .\*
>
> Although the language of the court is very broad, we cannot believe that it was intended to preclude examination into the fair market value of property under all circumstances, especially in a case where the agency required to engage in the process of valuation, viz., the Treasury Department, has itself been responsible for the rule making valuation necessary. We do not see why an interpretive regulation requiring the Treasury Department to engage in valuation should not be treated just like any other regulation interpreting a statutory provision. Upon reenactment of the statute without change, such a regulation should be given the force and effect of law. Surely if the Supreme Court had been faced, in the *Midland Mutual* case, with a statutory provision making determination of the fair market value necessary, it would not have disregarded such a mandate. Similarly, we are faced here with a regulation which has become imbedded in the statute. We may not disregard it simply because we may feel that, in its absence, we would not be inclined, because of the severe administrative burden which would be thereby imposed on the Treasury, to interpret the statute in the same way.

Neither in *Hadley Falls Trust Co.* v. *United States*, *supra*, nor *Boca Ratone Co.* v. *Commissioner*, *supra*, was any issue raised as to liability of the mortgagee for interest income.

Section 44 (d) of the Revenue Act of 1936 is a reenactment without change of section 44 (d) of the Revenue Acts of 1934 and 1932, which continued, without change which is here material, the provisions of section 44 (d) of the Revenue Act of 1928. The Treasury Department regulations promulgated under each of the above revenue acts are substantially the same. Each contains a provision that the fair market value of the property repossessed shall be presumed to be the amount for which it was bid in by the vendor in the absence of clear and convincing proof to the contrary. See art. 353, Regulations 74, under the Revenue Act of 1928; art. 353, Regulations 77, under the Revenue Act of 1932; art. 44–3, Regulations 86, under the Revenue Act of 1934; and art. 44–3, Regulations 94, under the Revenue Act of 1936. All of these regulations were amended by T. D. 4832, 1938–2 Cumulative Bulletin 155, to accord with the decision in *Boca Ratone Co.* case, *supra.* That case held that the regulations were invalid to the extent that they required different tax consequences for installment sales in which title was retained by the vendor and sales in which the vendor merely retained a lien. The clause calling for determination of fair market value of the property was not affected by the *Boca Ratone Co.* case and was included without change in the amended regulations. This long standing administrative interpretation of section 44 (d) must now be given the force and effect of law.

There can be no question but that the petitioners are entitled, under the cited cases and under the quoted provisions of section 44 (d) and article 44–3 of Regulations 94, to a deductible loss on the satisfaction of their installment obligation in the transaction by which they reacquired the property at the foreclosure sale, measured by the difference between the fair market value of the property at the date of such acquisition and the basis of the installment obligation, as defined by statute (section 44 (d)).

It is to be noted, however, that the gain or loss to be computed under section 44 (d) is "upon Disposition of Installment Obligations." The installment obligation in the instant case was the sum of the payments due on the principal of the installment contract, amounting to $162,289.97. The interest due on the contract was $53,126.01. We do not think that this interest can be treated as a part of the installment obligation. It was not a part of the sale price and was not taken into account in the computation of petitioners' gain to be realized on the installment contract.

In *Helvering* v. *Midland Mutual Life Insurance Co.*, *supra*, the Supreme Court said:

* * * A mortgagee who, at foreclosure sale, acquires the property pursuant to a bid of the principal and accrued interest is, as purchaser and grantee, in a position no different from that of a stranger who acquires the property on a bid of like amount. It is true that the latter would be obliged

to pay in cash the amount of his bid, while the formality of payment in cash is ordinarily dispensed with when the mortgagee acquires the property on his own bid. But the rights acquired *qua* purchaser are the same in either case; and, likewise, the legal effect upon the mortgage debt is the same. In each case the debt, including the interest accrued, is paid. Where the stranger makes the purchase, the debt is discharged by a payment in cash; where the mortgagee purchases the property, the debt is discharged by means of a credit. The amount so credited to the mortgagor as interest paid would be available to him as a deduction in making his own income tax returns. It would be strange if the sum deductible by the mortgagor debtor were not chargeable to the mortgage creditor as income received. Where the legal effect of a transaction fits the plain letter of the statute, the tax is held payable, unless there is clearly revealed in the act itself or in its history a definite intention to exclude such transactions from the operation of its applicable language. * * *

In the *Midland Mutual Life Insurance Co.* case, as in the like cases cited above, the fair market value of the property at the time of the foreclosure sale was deemed immaterial in determining whether the taxpayers received income in respect of such interest. We see no grounds for a distinction here.

In the instant case the petitioners' bid price at the foreclosure sale was more than sufficient to cover both principal and interest due on the installment contract. We therefore hold that petitioners are taxable on the amount of such interest.

As to the question of petitioners' gain or loss on the disposition of their installment obligation, we are of the opinion that the rule of *Midland Mutual Life Insurance Co.* and like cases does not control and that a computation must be made under section 44 (d) on the basis of the fair market value of the property at the time of the foreclosure sale rather than the bid price. *Hadley Falls Trust Co.* v. *United States, supra.*

Reviewed by the Board.

*Decision will be entered under Rule 50.*