BLANCHE A. LOCKHART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARTHUR M. LOCKHART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 108535, 108536. Promulgated March 18, 1943.

*W. L. Engelhardt, Esq.*, and *M. Leland Stanford, C. P. A.*, for the petitioners.
*B. M. Coon, Esq.*, for the respondent.

## OPINION.

ARUNDELL, *Judge:* The parties agree that the sale of stock was an installment sale. The dispute has to do with the proper method of

computing the admitted gain on the satisfaction of the unpaid installment obligations in 1939. Sections 44 (d) and 117 (b) of the Internal Revenue Code [1] are the pertinent provisions of law to which we are to look for a proper disposition of the controversy.

The "basis of the obligations" is defined as the excess of their face value over an amount equal to the income that would be returnable were the obligations satisfied in full. The parties agree that if the face amount of the obligations ($26,694) had been paid in full the gain would have been 94.2364 percent of the face value and the basis in such circumstances would have been $2,072.49.[2] With these figures it would seem an easy matter to determine the correct tax. If we approach the question purely as a mathematical one it would seem that we should deduct from the amount of $18,967.25 actually received, the basis of $2,072.49, thus arriving at a profit of $16,894.76. As section 117 (b), *supra*, taxes only one-half of this gain, namely $8,447.38, this sum would be includible in taxable income by the community, or $4,223.69 for each spouse. This is the result reached by the respondent in accordance with the following computation:

| | |
|---|---:|
| Value of the unpaid obligations | $26,694.00 |
| Profit returnable were the obligations satisfied in full—94.2364 percent of said face value (percentage of profit as determined when installment sale was consummated in 1937) | [3] 24,622.51 |
| Basis of obligation | 2,071.49 |
| Amount realized upon satisfaction of installment obligations | $18,967.25 |
| Basis for gain or loss as above | [3] 2,072.49 |
| Total gain | 16,894.76 |

<hr>

[1] SEC. 44. INSTALLMENT BASIS.

\* \* \* \* \* \*

(d) Gain or Loss Upon Disposition of Installment Obligations.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. \* \* \*

SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \*

(b) Percentage Taken Into Account.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\* \* \* \* \* \*

50 per centum if the capital asset has been held for more than 24 months.

[2] There are several minor discrepancies in the figures as presented by the parties, but this can be corrected under Rule 50 if not agreed upon.

[3] These figures are not mathematically correct but appear in the deficiency notice and in respondent's brief.

Petitioners, however, argue that section 117 must be given effect in determining the "income which would be returnable," and, therefore, the true profit if the obligations were satisfied in full, shown in the above tabulation as $24,622.51, should be reduced one-half, as only this latter sum would be "returnable" for tax purposes. Petitioners would. thus compute the tax as follows:

| | |
|---|---|
| Face value of the obligations_____ | $26, 694. 00 |
| Profit returnable were the obligations satisfied in full—94.2364 percent of said face value (percentage of profit as determined when installment sale was consummated in 1937) reduced 50 per cent by reason of section 117, *supra*_____ | 12, 578. 20 |
| Basis of obligation_____ | 14, 115. 80 |
| Amount realized upon satisfaction of installment obligations_____ | 18, 967. 25 |
| Basis for gain or loss as above_____ | 14, 115. 80 |
| Total gain_____ | 4, 851. 45 |

Notwithstanding the application of section 117 in determining the profit returnable in the foregoing computation, counsel for petitioners urge on brief that the gain thus arrived at should be further reduced by section 117, and so reach a figure of reportable gain of $2,425.73 for the community.

The difficulty with petitioners' theory is that it regards the phrase "income which would be returnable" as synonymous with the percentage of gain or loss which, under section 117, is "taken into account in computing net income." The word "returnable" is left undefined in the statute, but it may fairly be taken to mean gain or profit that a taxpayer is obliged to report on his return. As such it is not restricted to amounts which go to make up net income. By section 51 (a) of the Internal Revenue Code, each person subject to tax is directed to "make under oath a return stating specifically the items of his gross income and the deductions and credits allowed * * *." The definition of gross income in section 22 (a) includes gains or profits derived from sales. The gain from a sale is defined in section 111 as the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b). Ordinarily, the adjusted basis is cost, plus capital additions, less depreciation and other items properly chargeable to capital account.

This cursory statement of the pertinent statutory provisions indicates that a taxpayer upon making a sale is required to report the entire gain therefrom in his return. Having done this, the taxpayer is then accorded the benefit of section 117, which provides in effect that only a percentage of the gain thus returned need be included in computing net income if the asset has been held for a specified period. In our

opinion, however, this can not be construed to mean that the clear requirement of reporting or returning the entire gain has been waived.

Moreover, petitioners' view leads to a curious result which is difficult to believe the framers of the legislation intended. Notwithstanding that the property originally sold had a basis of only $2,000, petitioners argue and would have us hold that promissory notes received in exchange, which represented only about two-thirds of the selling price, had somehow, during the present tax year, acquired a basis in excess of $14,000. The legislative history impliedly rejects this conclusion. In 1934 a clarifying amendment was added to section 44 (d) with respect to the holding period. In explaining its effect the Senate Finance Committee gave the following illustration (S. Rept. 558, 73d Cong., 2d sess., p. 29) :

> * * * For example, A sells property held for 6 years for twice its cost and returns the income on the installment basis. A year and a half later A sells a $100 note received on the sale for $80. Applying the amendment, the $30 profit recognized comes under the 40-percent bracket of section 117 and not under the 80-percent bracket.

This statement would not have been accurate if petitioners are correct here, for under their reasoning the profit would have been zero instead of $30. For, applying their principle, the "returnable" income if the note had been satisfied in full would have been 40 percent of $50, or $20, and deducting that figure from the face value of $100 would leave a basis of $80, exactly the amount given in the illustration as received upon the sale of the note.

The formula urged by the respondent is the method provided by his regulations (see Regulations 103, sec. 19.44–5) which, in our opinion, correctly interprets the law.

*Judgment will be entered for the respondent.*